**STATE of North Dakota, Plaintiff and Appellee**

v.

**Darrin R. ACKERMAN, Defendant and Appellant**

**Cr. No. 920169.**

Supreme Court of North Dakota.

May 11, 1993.

Robert Allan Freed, Asst. State's Atty., Jamestown, for plaintiff and appellee.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant; argued by William A. Mackenzie.

VANDE WALLE, Chief Justice.

Darrin R. Ackerman appealed from the judgment of conviction and sentence entered by the trial court upon finding Ackerman guilty of possession of drug paraphernalia, a class A misdemeanor, in violation of § 12.1–31.1–03, N.D.C.C. We reverse.

At approximately 12:07 a.m. on August 27, 1991, Jamestown police officers received a report of a loud party and were dispatched to Lot # 34, Eastside Trailer Court. Officer LeRoy Gross arrived at the scene and immediately heard loud music and smelled the odor of burning marijuana. Officer Tom Nagel and Corporal Rudnick also arrived and all three agreed that they smelled the odor of burning marijuana. The odor got stronger as they moved closer to the trailer. A trailer window facing the officers was open, but curtained.

Rudnick went to the back of the trailer to prevent anyone from leaving, while Nagel and Gross went to the front door. Nagel knocked on the door and the trailer's owner, Dale W. Doepke, opened the door. Nagel testified at a hearing on a motion to suppress evidence that when the door was opened, "the odor of ah, burning marijuana was very strong." Doepke attempted to prevent Nagel's entry and asked for a warrant. Nagel entered the trailer, telling Doepke that he "did not have a warrant but ... could smell strong odor of burning marijuana." Once inside the trailer, Nagel saw Ackerman put his foot on top of a surgical clamp, "commonly referred to as ... a roach clip ... and it looked like he was attempting to hide it from me." Nagel also testified that he did not "see anything before [he] entered the trailer."[1]

---

1. This was stated even more clearly at the trial when Nagel testified on cross examination:

"Q Now in that you immediately went over and that's when you ah, picked this surgical clamp up off the ground?

"A Right. When I walked in after Dale, after I told Dale that I could smell an odor of burning marijuana, I looked over the table and that's when I saw Darrin reach out towards the stove to grab the items. And they were knocked on the floor.

"Q Um-huh, I mean this happened from the minute the door was opened and you looked in. We're just talking a matter of seconds, is that right?

"A This happened after I already got inside the trailer."

Ackerman was arrested and charged with possession of drug paraphernalia. Ackerman filed a motion to suppress evidence, contending (1) that he was a guest of Doepke, (2) that the officers entered the trailer "against Doepke's specific demand that they not enter, without consent, without legal sufficient probable cause and without a valid search warrant"; and (3) that "the items of evidence seized were not in plain view prior to the Law Enforcement Officer's unauthorized and unlawful entry." The trial court concluded that "the officers had the right to be on the premises for the purpose of quieting the loud party and what they discovered while there is admissible evidence," ruled that Ackerman's standing issue was moot, and denied the suppression motion. Ackerman was found guilty of possession of drug paraphernalia and he appealed.

■ Ackerman asserts that, as a guest in the trailer, he has standing to seek suppression of the evidence seized in the trailer on the ground that the officers' entry into the trailer and their seizure of evidence violated his rights under the Fourth Amendment to the United States Constitution [2] and Article 1, § 8 of the North Dakota Constitution.[3]

The United States Supreme Court in *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85, 92 (1990), said:

"Since the decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has been the law that 'capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978)."

The court held that one's status as an overnight guest in another's home "is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." 495 U.S. at 96–97, 110 S.Ct. at 1688, 109 L.Ed.2d at 93. *Compare State v. Raywalt*, 444 N.W.2d 688 (N.D.1989) (defendant made no showing that he had an expectation of privacy in an apartment searched pursuant to a warrant). Ackerman was a guest, but not an overnight guest, in Doepke's home. Professor LaFave, however, has observed that much of the reasoning underlying the Supreme Court's finding of standing on the part of an overnight guest would support standing on the part of other guests, as well:

"[I]t is fair to say that the *Olson* decision lends considerable support to the claim that shorter-term guests also have standing. For one thing, by rejecting the contention that a visitor must have 'complete dominion and control' the *Olson* Court undercut the basis on which many lower courts found shorter-term guests to lack standing. For another, ... [, when the warrantless police intrusion occurred,] Olson's 3 p.m. legitimate expectation—in the words of the Court, that 'he and his possessions will not be disturbed by anyone but his host and those his host allows inside'—would exist whether he arrived the night before, only that morning, or, indeed, only shortly before the police entry. Moreover, visiting the house of another *without* an overnight stay is (again in the words of *Olson*) likewise 'a longstanding social custom that serves functions recognized as valuable by society' and an event during which 'hosts will more likely than not respect the privacy interests of their guests.' "

4 Wayne R. LaFave, *Search and Seizure* § 11.3, at 56 (2d ed. 1987, 1993 pocket part).

**2.** "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**3.** Our North Dakota Constitutional provision is virtually identical to the Fourth Amendment to the United States Constitution.

A guest present in a trailer house in which music is played so loudly as to cause complaints to the police and in which the odor of burning marijuana is allowed to escape through an open window and become detectable by neighbors, passersby, or police officers responding to a loud music complaint, may expect a knock at the door. And, if the door is opened to a police officer, such a guest may expect to be arrested for a crime being committed in the officer's presence at the time the door is opened. Such a guest, however, need not expect a police officer to enter and search without either consent or a warrant, absent the immediate commission of a crime.

Ackerman contends that the trial court erred in denying his suppression motion because there were no exigent circumstances justifying the officers' warrantless entry into the trailer. We agree.

The officers testified at the suppression hearing that they believed a crime was being committed in their presence. Gross testified that he entered the trailer without consent or a warrant "[b]ecause I believed a law was being broken and when that door opened up and I could smell the odor of that marijuana, ah—I believe a crime had been committed and we went in, after the door was opened." Nagel testified that when he smelled the odor of burning marijuana, he believed the crime of possessing marijuana was being committed.[4] Rudnick testified that when he smelled the odor of marijuana coming out of the open window in the trailer, he believed that the crime of possession of marijuana was being committed.

■ Section 29–06–15(1)(a), N.D.C.C., authorizes an arrest without a warrant if an offense is committed in an officer's presence:

"1. A law enforcement officer, without a warrant, may arrest a person:

"a. For a public offense, committed or attempted in the officer's presence; and for the purpose of this subdivision, a crime must be deemed committed or attempted in the officer's presence

when what the officer observes through the officer's senses reasonably indicates to the officer that a crime was in fact committed or attempted in the officer's presence by the person arrested."

Here, however, the officers did not arrest for an offense committed in their presence and then enter and search. Gross did not arrest Doepke for "probably in excess of an hour" after entering the trailer. Nagel did not arrest Ackerman for "about an hour and a half" after entering the trailer. The delay occurred while the officers unsuccessfully sought a warrant to conduct a further search of the trailer. The drug paraphernalia was not in plain view until after the officers entered the trailer without a warrant and the search was not incident to an arrest because no arrests were made until more than an hour after the search.

■ The officers testified that they feared the destruction of evidence. The imminent destruction of evidence may constitute exigent circumstances justifying a warrantless intrusion. *Minnesota v. Olson, supra; State v. Page*, 277 N.W.2d 112 (N.D.1979).

In *Payton v. New York*, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639, 650 (1980), which involved warrantless routine arrests in which there was ample time to obtain warrants, the United States Supreme Court observed that the " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972)); said that "the warrant procedure minimizes the danger of needless intrusions of that sort"; and held that "searches and seizures inside a home without a warrant are presumptively unreasonable." In *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984), the Supreme Court said: "Before agents of the government may invade the sanctity of the home, the burden is on the government to demon-

---

**4.** Ackerman was not charged with possession of marijuana.

strate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." In a case similar in some respects to the instant case, *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), narcotics agents, acting on a tip from a confidential informer, went to the defendant's hotel, where the odor of burning opium led them to the defendant's room, which they entered and searched without a warrant. In overturning the defendant's conviction, the Supreme Court stated:

> "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a moveable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear."

333 U.S. at 14–15, 68 S.Ct. at 369, 92 L.Ed. at 440–41. With regard to the warrantless entry of a home to arrest, we said in *State v. Nagel*, 308 N.W.2d 539, 544 (N.D.1981): "When destruction of evidence is the exigent circumstance, there must be more than a mere belief that such destruction is probable, coupled with the fact that the suspects know or will soon become aware that the police are on their trail."

In the instant case, when Nagel was asked at the hearing on the suppression motion why he felt it "necessary to enter that trailer right away," he replied: "So that they could not destroy any evidence or anything that we might find in there right away." He also testified: "We determined that if they would look out the window and see us ah—or if they, someone would decide to go outside that ah, the possibility of us being discovered or them destroying something, would have been great." When asked, "If you believe that there was marijuana burning in that trailer, what happens to that evidence if you delay by getting a warrant," Nagel replied: "You can ah, it gets burned all up." Gross testified that if he had taken time to get a warrant, "people would have probably had an opportunity to finish doing [their] smoking. Ah, people could have left the building. The stuff could have been destroyed." Rudnick testified that "we had our probable cause to at least go into the building so nothing would be disturbed or thrown away or whatever, lose our evidence." [5]

As we view the record, before Nagel entered the trailer, despite Doepke's clear indication that Nagel was not to enter without a warrant, and prior to which entry he did not "see anything", the officers may have had probable cause to believe that a crime—possession of a controlled substance in violation of § 19–03.1–23, N.D.C.C.,—was being committed in the trailer. However, the officers' testimony about the assertedly feared destruction of evidence, upon which they base their right to enter the home without a warrant, is nothing more than speculation about possibilities and does not "demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin, supra*, 466 U.S. at 750, 104

---

**5.** Officer Rudnick may have believed that the officers had probable cause, but that is a determination ordinarily to be made by a disinterested magistrate:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable

men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

*Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

S.Ct. at 2098, 80 L.Ed.2d at 743. We, therefore, conclude that the trial court erred in denying Ackerman's motion to suppress evidence.

Reversed.

MESCHKE and LEVINE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICK-STAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SAND-STROM, not being members of the Court when this case was heard, did not participate in this decision.