1997 ND 142

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Alejandro AVILA, Defendant and Appellant.**

**Criminal No. 960385.**

Supreme Court of North Dakota.

July 17, 1997.

MARING, Justice.

[¶ 1] Alejandro Avila appealed from a judgment of conviction,[1] entered upon a conditional plea of guilty, for possession of a controlled substance with intent to deliver. Avila asserts the trial court erred in denying his motion to suppress evidence. An inadequate record and a lack of relevant findings by the trial court make meaningful appellate review of the issues presented impossible in this case, so we reverse and remand for further proceedings.

[¶ 2] On the afternoon of February 26, 1996, the landlord of a Fargo apartment building called Officer Gordon Olson of the police department and told him there was a marijuana odor coming from Brian Sears's apartment. Olson recognized Sears's name from prior drug investigations. Olson, dressed in civilian clothes, went to the apartment house with another officer to investigate.

[¶ 3] The officers detected the odor of burning marijuana, which grew stronger as they got closer to Sears's apartment. Olson knocked on the apartment door and Lori Kehrberg opened the door. According to Olson's "Supplementary Offense Report," Kehrberg opened the door approximately one foot and "positioned herself to the west of the door, making it so the door could not be opened further without her moving away."

[¶ 4] Olson asked Kehrberg if Sears was home. She said Sears was not there. Olson was able to see through the partially opened doorway a marijuana smoking bong on the coffee table near a person sitting on the couch. Olson's version of the events which followed are contained in his report:

At that point I displayed my badge to Kehrberg and identified myself to her as a narcotics investigator with the Fargo Police Department. I explained that I had come to that apartment on a complaint of marijuana odors, and based on what I had smelled coming from her apartment and the fact that I saw a glass bong in plain view from my vantage point outside the apartment, I would need to further investigate the situation. I then asked Kehrberg if I could come into the apartment and

---

1. Avila also appealed from the order denying his suppression motion. However, N.D.R.Crim.P. 11(a)(2) authorizes an appeal only from the judgment of conviction while allowing "review of the adverse determination of any specified pretrial motion." An appeal from the order denying the suppression motion was unnecessary for this Court to gain jurisdiction to review that order.

speak with her about the situation. Kehrberg made an ambiguous response I could not understand, which I interpreted to mean something to the effect of "I don't know."

After identifying myself as a police officer, I observed that Kehrberg became increasingly uncomfortable and uneasy about talking with me. I asked a second time if I could come inside and talk with her about the situation, and again I received an ambiguous response. At this point I stepped into the doorway so that Kehrberg would not be able to close the door.

[¶ 5] When the two officers entered the apartment they found Avila sitting on the couch next to some marijuana. A semi-automatic pistol was lying on another couch. Avila was frisked for weapons, and Kehrberg explained she was a resident of the apartment and Avila was her guest. Olson told them they were being detained but not arrested.

[¶ 6] Olson walked through the apartment with Kehrberg to see if other persons were present. Olson asked Kehrberg if he could further search the apartment, but she refused. Olson left to apply for a search warrant. While he was gone, Avila asked to leave the apartment. The other officer asked Avila if he could search his backpack and, according to Olson's report, "Avila gave his positive consent." The search of the backpack revealed drug paraphernalia, 26 grams of marijuana, and $2,380 in cash. Avila was arrested.

[¶ 7] Olson obtained a warrant to search the apartment. Police found more than two pounds of marijuana and other contraband. Avila was charged with possession of a controlled substance with intent to deliver and possession of a controlled substance in violation of N.D.C.C. §§ 19–03.1–05 and 19–03.1–23, and possession of drug paraphernalia in violation of N.D.C.C. § 12.1–31.1–03.

[¶ 8] Avila moved to suppress "all evidence obtained from the search of the residence." Avila argued he had standing to raise the Fourth Amendment issues as an apartment guest. He argued the warrantless search "did not fall within any exception" to the warrant requirement, but only addressed the exigent circumstances exception. The State in its opposition to the motion conceded Avila had standing to raise the Fourth Amendment issues based on this Court's decision in *State v. Ackerman*, 499 N.W.2d 882 (N.D.1993). The State argued it was not relying on the exigent circumstances exception to the warrant requirement, but was relying on consent and the plain view doctrine to validate the warrantless search. In a supplemental brief in support of the suppression motion, Avila argued the plain view doctrine, exigent circumstances, and consent were not valid exceptions to the warrant requirement under the circumstances.

[¶ 9] At the evidentiary hearing on the motion to suppress, the parties "orally agreed on the record to forego the evidentiary hearing and oral arguments on the motion to suppress and instead, the parties stipulated to the facts as set forth in Officer Gordon Olson's February 27, 1996 Supplementary Offense Report, which is nine pages long, Alejandro Avila's affidavit, and Lori Kehrberg's affidavit." Kehrberg said in her affidavit, "I did not consent to the police officers entering my apartment." Avila said in his affidavit, "I did not consent to the search of my backpack by the police." Neither the search warrant nor the affidavit in support of the warrant were made a part of the record.

[¶ 10] Against this backdrop, the trial court's order denying Avila's suppression motion states in its entirety:

Defendant moves the court to suppress evidence discovered through a warrantless search of an apartment in which he was a guest. Citing *State v. Ackerman*, 499 N.W.2d 882, 883 (N.D.1993), he argues that he had a reasonable expectation of privacy that was violated when the police entered the apartment after smelling marijuana, knocking at the door, and observing the apartment while talking to a resident of the apartment, Lori Kehrberg.

However, unlike the resident of the trailer in *Ackerman*, there is no clear evidence that Ms. Kehrberg attempted to block the path of the police officer as he entered her apartment. On the contrary, the evidence

is that her response was "ambiguous." Therefore, the facts here are distinguishable from those of *Ackerman.*

[¶ 11]Avila entered a conditional plea of guilty to possession with intent to deliver, reserving his right to challenge the trial court's denial of the suppression motion under N.D.R.Crim.P. 11(a)(2). The other two charges against him were dismissed.

[¶ 12] On appeal, Avila again asserts he has standing, and argues consent, exigent circumstances, and the plain view doctrine did not justify the initial warrantless search, thus requiring suppression of all evidence seized under the fruit-of-the-poisonous-tree doctrine. The State again concedes Avila has standing, but argues consent, exigent circumstances, and the plain view doctrine justified the warrantless search. The State concedes all evidence would have to be suppressed under the fruit-of-the-poisonous-tree doctrine if a Fourth Amendment violation occurred, but only if the inevitable discovery doctrine, a theory not raised in the trial court, is inapplicable under the circumstances.

[¶ 13] Our review is hindered by the confusing nature of the trial court's decision and the lack of any clear findings relating to the issues raised by the parties. Even though the State conceded the standing issue, the trial court appears to have found the issues in this case revolve around *State v. Ackerman,* 499 N.W.2d 882 (N.D.1993), in which this Court held that a non-overnight guest in a trailer home had standing to seek suppression of evidence seized in the trailer during a warrantless search. We further held in *Ackerman* there were no exigent circumstances to justify the warrantless entry and ruled the trial court erred in denying the suppression motion. *Id.*

[¶ 14] In *Ackerman,* 499 N.W.2d at 883, 886, the owner of the trailer, upon opening the door, attempted to prevent the officers from entering and clearly indicated they were not to enter without a warrant. This part of the fact situation had no legal significance to the standing issue, and it is undisputed in this case that, under *Ackerman,* Avila has standing to seek suppression of the incriminating evidence.

[¶ 15] To the extent the trial court might have interpreted the *Ackerman* fact situation as the benchmark against which consent searches are measured, the trial court was incorrect. Consent to search clearly was not given and was not an issue in *Ackerman.* Moreover, the trial court's implication that Kehrberg needed to physically "block the path of the police officer as he entered her apartment" in order to show a lack of consent to the warrantless entry and search is a misapplication of the law.

[¶ 16] The State has the burden of showing that a warrantless search falls within an exception to the warrant requirement. *State v. Frank,* 350 N.W.2d 596, 599 (N.D. 1984). Consent is one of the exceptions. *State v. Zimmerman,* 529 N.W.2d 171, 174 (N.D.1995). The trial court needs to determine whether the consent was voluntary under the totality of the circumstances. *State v. Page,* 277 N.W.2d 112, 116 (N.D.1979). To be voluntary, the consent must not be coerced by explicit or implicit means or by implied threat or covert force. *State v. Larson,* 343 N.W.2d 361, 364 (N.D.1984). Although the existence or absence of certain factors concerning the characteristics and condition of the person at the time of consent and the details of the setting in which the consent was obtained are significant in deciding voluntariness, no one factor in and of itself is determinative. *State v. Discoe,* 334 N.W.2d 466, 468 (N.D.1983).

[¶ 17] Contrary to the trial court's apparent reasoning, to sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering. *See generally United States v. Jaras,* 86 F.3d 383, 390 (5th Cir.1996) (consent cannot be inferred from silence and failure to object when police do not expressly or implicitly request consent); *United States v. Shaibu,* 920 F.2d 1423, 1427 (9th Cir.1990) (absent specific request by police for permission to enter a home, government may not show consent to enter from defendant's failure to object to entry because "[t]o do so

would be to justify entry by consent and consent by entry"); *United States v. Wenzel,* 485 F.Supp. 481, 483 (D.Minn.1980) (failure to order uninvited officer to leave apartment is "hardly enough to establish consent"); *Robinson v. State,* 578 P.2d 141, 144 (Alaska 1978) (where defendant at no time indicated consent to officers' presence except by silence, failure to demand that officers leave was not voluntary consent); *Ingram v. State,* 364 So.2d 821, 822 (Fla.Ct.App.1978) (submission to apparent authority of officer is not necessarily consent to search and a showing of acquiescence without at least tacit consent is not sufficient to prove consent); I W. Ringel, *Searches & Seizures, Arrests and Confessions* § 9.3 (2d ed. 1997); 2 J. Cook, *Constitutional Rights of the Accused* § 4:55 (3d ed. 1996). Kehrberg's failure to physically block the police from entering the apartment is not indicative of consent.

[¶ 18] We are unable to determine, based on the parties' "stipulated ... facts," which are actually disputed, whether Kehrberg voluntarily consented to the entry and search of the apartment. We remand for a finding on this issue and the other issues raised following an evidentiary hearing where the record can be supplemented with the evidence necessary for the court to reach an informed decision, and where the factual circumstances can be explored in the context of the issues the parties have raised. There may be some cases in which a suppression motion is capable of decision based on stipulated facts. But trial courts should be wary of dispensing with an evidentiary hearing when, like here, the parties have raised a flurry of Fourth Amendment issues. This record does not even contain the search warrant or the affidavit in support of the warrant, evidence possibly necessary to decide the inevitable discovery issue raised, albeit belatedly, by the State. *See State v. Winkler,* 552 N.W.2d 347, 354 n. 4 (N.D.1996) (explaining difference between "closely related" inevitable discovery and independent source doctrines). An evidentiary hearing is the preferable method for resolving the factual issues raised in this case.

[¶ 19] We reverse the judgment and remand for further proceedings.

[¶ 20] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

**K.D.M., Defendant and Appellant.**

