1999 ND 77

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Randy E. DeCOTEAU, Defendant and Appellant.**

No. 980265.

Supreme Court of North Dakota.

April 27, 1999.

Ladd R. Erickson, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Randy DeCoteau appeals from his criminal judgment for possession of marijuana and possession of drug paraphernalia. DeCoteau entered a conditional plea of guilty with right to appeal the denial of his motion to suppress evidence seized as a result of entry into his home. Because the entry by officers into DeCoteau's home violated the Fourth Amendment, the evidence should have been suppressed, and we reverse.

I

[¶ 2] On May 3, 1998, four Mandan police officers investigated an anonymous report of a domestic disturbance in southwest Mandan at the residence of DeCoteau and Kim Engel. Upon arrival, the officers saw a group of children standing in the street and pointing to the couple's trailer. One of the children told the officers he had heard the sound of breaking glass coming from inside the residence. Engel and DeCoteau were outside the trailer, unloading their car.

[¶ 3] The officers were unsure whether there had been a disturbance, and when they arrived, there was none. Engel did not want anything to do with the officers; she told them there was nothing wrong and she wanted them to leave. The officers also talked with DeCoteau, and he wondered why they had come. The officers then noticed a broken window, and Engel told them it had been broken for awhile. According to testimony of the officers, they never checked on the window to verify whether it was a fresh break.

[¶ 4] One officer told Engel that because the sound of breaking glass had been reported, he would like to see whether the children were all right. Engel entered the house, and the officers followed her. Engel never affirmatively consented to the officers entering the house; they merely followed her in. Once inside, one of the officers noticed a marijuana pipe. Finding marijuana residue in it, he proceeded to secure a search warrant. DeCoteau was arrested. After his motion to suppress was denied, he entered a conditional plea. He now appeals.

[¶ 5] The district court had jurisdiction under N.D.C.C. § 27–05–06. DeCoteau's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] DeCoteau argues the evidence seized in the trailer should have been suppressed because there was no consent or exigent circumstance to avoid the warrant requirement. We give deference to the district court's findings of fact when reviewing a motion to suppress evidence. *City of Fargo v. Lee*, 1998 ND 126, ¶ 7, 580 N.W.2d 580; *State v. Kitchen*, 1997 ND 241, ¶ 11, 572 N.W.2d 106. The district court is in a superior position to assess the credibility of witnesses and weigh the evidence, and conflicts are resolved in favor of affirmance. *Lee*, at ¶ 7. A district court's findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence. *Id.* (citing *State v. Sabinash*, 1998 ND 32, ¶ 8, 574 N.W.2d 827 (relying on *State v. Bjornson*, 531 N.W.2d 315, 317 (N.D.1995))); *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D. 1994). Matters of law are fully reviewable by this Court on appeal. *E.g., Fahlsing v. Teters*, 552 N.W.2d 87, 89 (N.D.1996).

## A

[¶ 7] The Fourth Amendment to the United States Constitution and article I, section 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures in their homes. *Lee*, 1998 ND 126, ¶ 8, 580 N.W.2d 580; *Kitchen*, 1997 ND 241, ¶ 9, 572 N.W.2d 106; *see State v. Herrick*, 1997 ND 155, ¶ 17, 567 N.W.2d 336; *see also State v. Winkler*, 552 N.W.2d 347 (N.D.1996). Subject to a few well-delineated exceptions, searches and seizures without a warrant are unreasonable under the Fourth Amendment.

[¶ 8] In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court recognized a physical entry into a home is the chief evil against which the Fourth Amendment is directed, and held the Fourth Amendment prohibits police from making a nonconsensual entry into a suspect's home to make a warrantless felony arrest. Under *Payton*, nonconsensual, warrantless searches and seizures in a home are presumptively unreasonable, absent a government showing of probable cause and exigent circumstances. *See Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *see also Minnesota v. Carter*, — U.S. —, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (the Fourth Amendment provides great protection to persons inside their home). The trailer home of Kim Engel and Randy DeCoteau is afforded the same protections as any other home.

## B

[¶ 9] There are, however, exceptions to the search warrant requirement. A consent search is one exception to both the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Lee*, 1998 ND 126, ¶ 9, 580 N.W.2d 580 (citing *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410). A consent search "must be conducted according to the limitations placed upon an officer's right to search by the consent or the search loses its validity." *State v. Huether*, 453 N.W.2d 778, 782 (N.D.1990).

> The trial court needs to determine whether the consent was voluntary under the totality of the circumstances. *State v. Page*, 277 N.W.2d 112, 116 (N.D.1979). To be voluntary, the consent must not be coerced by explicit or implicit means or by implied threat or covert force. *State v. Larson*, 343 N.W.2d 361, 364 (N.D.1984). Although the existence or absence of certain factors concerning the characteristics and condition of the person at the time of consent and the details of the setting in which the consent was obtained are significant in de-

ciding voluntariness, no one factor in and of itself is determinative. *State v. Discoe,* 334 N.W.2d 466, 468 (N.D.1983).

*Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410. The question whether a search exceeds the scope of consent is a factual one. In a preliminary proceeding, a district court's findings of fact of a criminal case will not be set aside if, "after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *State v. Zimmerman,* 529 N.W.2d 171, 173 (N.D.1995) (citing *Thompson,* 520 N.W.2d at 581).

[¶ 10] The State argues the district court did not rule on the issue of consent. Had it, the State argues, the district court would have found Engel consented to the search of their home. The district court discussed consent, stating: "You're both arguing whether there was consent to enter to search." The district court continued, saying "[w]hether they had consent to enter—obviously if they had consent then we wouldn't be here but if they didn't have consent, it really doesn't make that much difference either." The district court then stated:

> I will say for the record that I don't believe that a person has to affirmatively refuse entry to a police officer in order for them not to enter. You know, if she would have just opened—well the fact that she opened the door and didn't say anything when they walked in, to me, has very little constitutional significance because I don't think because a person has a reasonable expectation of privacy in their residence, I don't think you have to say to a police officer no, you can't come in. I think if we are looking at purely consent, the State would have to show that she didn't just acquiesce, she affirmatively invited them in somehow and I don't think just opening the door and letting them follow her in necessarily does that. . . .

The State argues this statement by the district court was not enough to decide the issue of consent, but the State is incorrect. Based on its own words, the court did not find Engel's act of walking into her home affirma-

tively granted the police consent to enter the home she shared with DeCoteau. From the context of the entire statement, the district court did not find consent.

[¶ 11] "[T]o sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering." *Avila,* 1997 ND 142, ¶ 17, 566 N.W.2d 410 (citing *United States v. Jaras,* 86 F.3d 383, 390 (5th Cir.1996) (consent cannot be inferred from silence and failure to object when police do not expressly or implicitly request consent); *United States v. Shaibu,* 920 F.2d 1423, 1427 (9th Cir.1990) (absent specific request by police for permission to enter a home, government may not show consent to enter from defendant's failure to object to entry because "[t]o do so would be to justify entry by consent and consent by entry"); *United States v. Wenzel,* 485 F.Supp. 481, 483 (D.Minn.1980) (failure to order uninvited officer to leave apartment is "hardly enough to establish consent"); *Robinson v. State,* 578 P.2d 141, 144 (Alaska 1978) (where defendant at no time indicated consent to officers' presence except by silence, failure to demand that officers leave was not voluntary consent); *Ingram v. State,* 364 So.2d 821, 822 (Fla.Ct.App.1978) (submission to apparent authority of officer is not necessarily consent to search, and a showing of acquiescence without at least tacit consent is not sufficient to prove consent); I.W. Ringel, Searches & Seizures, Arrests and Confessions § 9.3 (2d ed.1997); 2 J. Cook, Constitutional Rights of the Accused § 4:55 (3d ed.1996)).

[¶ 12] The district court found Kim Engel did not consent with either her words or actions. Her act of opening the door and allowing the police to follow her into the home was not consent and was not enough to obviate the warrant requirement for entry into a person's home. The district court did not err in finding lack of consent.

C

[¶ 13] The district court, however, did not suppress the evidence discovered as a result

of the non-consensual entry into Engel's and DeCoteau's home. Although Engel did not consent, the district court stated: "I do think the case is clearly one in which the officers had reason to believe that there could be a potential danger to the children based on the fact that it was a report of a domestic dispute...." The district court then concluded the police were allowed to go into the house based on "[p]artly exigent circumstances and partly community care taking."

1

[¶ 14] Exigent circumstances is another exception to the warrant requirement. In *Welsh*, 466 U.S. at 750, 104 S.Ct. 2091, the United States Supreme Court held: "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries."

[¶ 15] Recently, we said, "[e]xigent circumstances 'has been defined as an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.'" *Lee*, 1998 ND 126, ¶ 10, 580 N.W.2d 580 (quoting *State v. Nagel*, 308 N.W.2d 539, 543 (N.D.1981)). The government has the burden to demonstrate exigent circumstances to overcome the presumption a warrantless search is unreasonable. *Id.* (citing *State v. Ackerman*, 499 N.W.2d 882, 885–86 (N.D.1993) (relying on *Welsh*, 466 U.S. at 750, 104 S.Ct. 2091)). The district court's findings of fact are reviewed giving "'due weight to the inferences drawn from those facts by ... judges and law enforcement officers.'" *United States v. Cooper*, 168 F.3d 336, 338 (8th Cir.1999) (citing *United States v. Ball*, 90 F.3d 260, 262 (8th Cir.1996) (quoting *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996))). "A de novo standard of review is applied to the ultimate determination of whether the facts constitute exigent circumstances...." *Id.* at 339. This is similar to our review of probable cause. *See State v. Kitchen*, 1997 ND 241, ¶¶ 12–13, 572 N.W.2d

106 (we defer to a trial court's findings of fact in the disposition of a motion to suppress, but whether findings of fact meet a legal standard is a question of law which is fully reviewable).

[¶ 16] At DeCoteau's suppression hearing, the district court concluded exigent circumstances existed to enter the home without a warrant because children in the street outside the residence reported hearing glass breaking, a domestic dispute had been reported, and the officers had an obligation to check on the safety of the children. The district court stated:

> The officers were dispatched and told that [a domestic dispute had taken place] and that's what they had to go by. When they got to the scene, it was reported to them that kids heard glass breaking in the residence. That would give, to me, any reasonable police officer reason to believe that they should go in that house and make sure—especially if—and make sure that people in there are okay.

[¶ 17] Here there was an anonymous report of a domestic disturbance. An anonymous report such as this lacks credibility. *State v. Miller*, 510 N.W.2d 638, 641 (N.D. 1994) ("At the low end of the reliability scale are tips from anonymous callers.") Some children were in the street. A "young child on a bicycle stated that he had heard glass breaking coming from within the residence." The officers were unsure whether there had been a disturbance. When they arrived, there was none. The adult residents were outside, appeared calm, and said there was nothing wrong. The officers could see a broken window. They were told it had been broken for some time, but made no effort to evaluate it. The officers said they wanted to check on the children, but did not ask for the children to be brought outside or to the door, nor was such a request denied. The officers instead proceeded into the residence without consent.

[¶ 18] We conclude the facts found by the district court do not rise to the level of exigent circumstances justifying warrantless entry into the house. The facts established

no emergency requiring swift action to prevent imminent danger to life or property.

## 2

[¶ 19] While this Court has not dealt with a community caretaking relating to a home, we have done so regarding automobiles. An officer's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response. *See, e.g., State v. Franklin,* 524 N.W.2d 603, 605 (N.D. 1994). Law enforcement officers frequently act in the role of community caretaker, actions separate from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *State v. Langseth,* 492 N.W.2d 298, 300 (N.D.1992) (citing *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place. *State v. Steinmetz,* 552 N.W.2d 358, 360 (N.D.1996).

[¶ 20] Community caretaking justifies law enforcement contact, including stops, without reasonable suspicion of unlawful conduct. *See, e.g., State v. Halfmann,* 518 N.W.2d 729, 730 (N.D.1994) (citations omitted); *State v. Brown,* 509 N.W.2d 69, 71 (N.D.1993).

[¶ 21] In this case, the police were called to investigate an anonymous tip regarding a domestic disturbance. When the officers arrived, there was no disturbance. Kim Engel was unloading her car and asked the officers why they were there. She clearly did not want the officers there, and did not need or request their assistance. There was no "community caretaking" role to fill by entering the home.

## III

[¶ 22] The decision of the district court is reversed. The evidence against DeCoteau should have been suppressed, and the case is remanded to allow DeCoteau to withdraw his guilty plea.

[¶ 23] VANDE WALLE, C.J., NEUMANN, MARING and KAPSNER, JJ., concur.