2000 ND 186

CITY OF JAMESTOWN, Plaintiff
and Appellee,

v.

John Timothy DARDIS II, Defendant
and Appellant.

Nos. 20000109, 20000110.

Supreme Court of North Dakota.

Oct. 26, 2000.

Charles J. Gilje, City Prosecutor, Jamestown, for plaintiff and appellee.

Lawrence P. Kropp, Kropp Law Offices, Jamestown, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] John Timothy Dardis II appealed his convictions for minor in possession/consumption of alcohol and disorderly conduct. Dardis entered a conditional plea of guilty, with right to appeal the denial of his motion to suppress evidence seized as a result of entry into his home. We reverse and remand because the police officer entered Dardis's home without a warrant or a valid exception to the warrant requirement, in violation of the Fourth Amendment, and the evidence should have been suppressed.

[¶ 2] On the evening of January 29, 1999, at about 11:30 p.m., the Jamestown Police Department responded to a call to investigate a loud party at an apartment in Jamestown. Officer Nagel was the first to arrive. He noticed an unusual number of cars parked nearby, as well as loud music and talking coming from the top floor apartment. Officer Nagel climbed the stairs to the upstairs apartment and knocked on the door. He heard people warning "It's the cops. The cops are here." By this time there were three officers around the apartment.

[¶ 3] Officer Nagel continued to knock and could hear people scrambling around inside, he also heard people making comments, and what he believed to be a window breaking. He directed another officer to go and make sure no one was jumping out of the windows. By this time a fourth officer had arrived. Officer Nagel requested assistance from the county sher-

iff's department and continued to knock on the apartment door.

[¶ 4] A young woman opened the door. Officer Nagel testified he could smell the odor of alcoholic beverage coming from inside the apartment and could see a number of young people inside. From the door, Officer Nagel could see a short hallway with three open doors to adjoining rooms. There is conflict in the testimony about whether or not Officer Nagel stepped into the apartment at this point. The trial court found the officer walked into the apartment once the door was opened. Officer Nagel asked the young woman who opened the door if she lived in the apartment, she said she did not. Officer Nagel asked if she knew who did live there and said he needed to talk to the person who lived in the apartment. The legal resident of the apartment, John Dardis, came out of the bedroom.

[¶ 5] Officer Nagel told Dardis he could smell the odor of an alcoholic beverage and asked if anyone in the apartment was 21 years old or older, Dardis shook his head to indicate no. Dardis walked toward Officer Nagel and Officer Nagel established Dardis's breath smelled of alcohol. Officer Nagel asked for some identification from Dardis, who turned to go to another room and then turned back to answer loudly that he did not have any identification. Officer Nagel observed Dardis's eyes were heavily bloodshot.

[¶ 6] At this point Officer Nagel testified Dardis became very obnoxious and disorderly. Dardis turned and walked away from Officer Nagel, who told Dardis to stop and come back. Officer Nagel repeated this twice and Dardis continued walking away. A young man grabbed hold of Dardis in an attempt to calm Dardis down, which Officer Nagel said resulted in a shoving match. Officer Nagel called for assistance. Dardis broke away from the young man and continued to walk away. At this point Officer Nagel stepped further into the apartment and grabbed hold of Dardis to stop him from walking away.

Dardis grabbed hold of Officer Nagel's wrist. Officer Nagel told Dardis to let go of his hand, which he did. Officer Nagel then arrested Dardis for consumption of alcohol and disorderly conduct.

[¶ 7] Our standard of review of a district court's denial of a suppression motion is well-established. We defer to a district court's findings of fact in the disposition of a motion to suppress, resolving conflicts in testimony in favor of affirmance, as we recognize the district court is in a superior position to assess credibility of witnesses and weigh the evidence. *State v. Wanzek*, 1999 ND 163, ¶ 5, 598 N.W.2d 811. In general, we will not reverse a district court's decision to deny a motion to suppress if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. *Id.* However, while we defer to the district court's findings of fact, questions of law are fully reviewable. *State v. Overby*, 1999 ND 47, ¶ 5, 590 N.W.2d 703. Additionally, whether findings of fact meet a legal standard is a question of law. *State v. Kitchen*, 1997 ND 241, ¶ 12, 572 N.W.2d 106.

[¶ 8] The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, as well as Article I, Section 8, of the North Dakota Constitution prohibit unreasonable searches and seizures. *State v. Wanzek*, 1999 ND 163, ¶ 7, 598 N.W.2d 811(citing *State v. Lanctot*, 1998 ND 216, ¶ 5, 587 N.W.2d 568). A physical entry into a home is a chief evil against which the Fourth Amendment protects. *State v. DeCoteau*, 1999 ND 77, ¶ 8, 592 N.W.2d 579 (citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). The United States Supreme Court stated in *Payton* that warrantless searches and seizures in a home are presumptively unreasonable. 445 U.S. at 586, 100 S.Ct. 1371. *See Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990);

*New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)(confirming the Fourth Amendment provides great protection for persons inside their home). The United States Supreme Court also determined: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton,* 445 U.S. at 590, 100 S.Ct. 1371.

[¶ 9] Warrantless searches are unreasonable unless they are within one of the few recognized exceptions to the requirement for a search warrant. *Wanzek,* 1999 ND 163, ¶ 7, 598 N.W.2d 811. The burden is on the government to show a warrantless search is within an exception to the warrant requirement. *City of Fargo v. Lee,* 1998 ND 126, ¶ 8, 580 N.W.2d 580 (citing *State v. Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410). Consent is one of the exceptions. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *DeCoteau,* 1999 ND 77, ¶ 9, 592 N.W.2d 579; *Lee,* 1998 ND 126, ¶ 9, 580 N.W.2d 580 (citing *Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410).

[¶ 10] Although the trial court found Officer Nagel did not remain at the door of the apartment but rather walked into the apartment when the door was opened, the State argues he had the implicit consent to do so from the young woman who opened the door. The trial court acknowledged the State is required to show affirmative conduct that is consistent with the giving of consent. The trial court found the young woman who opened the door consented to Officer Nagel's entry into the home by her act of opening the door widely.

[¶ 11] We held in *DeCoteau* "to sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering." 1999 ND 77, ¶ 11, 592 N.W.2d 579 (quoting *Avila,* 1997 ND 142, ¶ 17, 566 N.W.2d 410). *See also United States v. Jaras,* 86 F.3d 383, 390 (5th Cir.1996)(holding consent cannot reasonably be implied from silence and failure to object when police do not expressly or impliedly request consent); *United States v. Shaibu,* 920 F.2d 1423, 1427 (9th Cir.1990)(deciding absent specific request by police for permission to enter a home, government may not show consent to enter from defendant's failure to object to entry because "[t]o do so would be to justify entry by consent and consent by entry"); *United States v. Wenzel,* 485 F.Supp. 481, 483 (D.Minn.1980)(holding failure to order uninvited officer to leave apartment is "hardly enough to establish consent"); 1 William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 9.3 (2d ed.2000).

[¶ 12] In *DeCoteau,* the officers responded to an anonymous report of domestic disturbance and followed the woman, who was standing in the yard when they arrived, into the trailer home. 1999 ND 77, ¶¶ 2–4, 592 N.W.2d 579. We affirmed the trial court's finding "[h]er act of opening the door and allowing the police to follow her into the home was not consent and was not enough to obviate the warrant requirement for entry into a person's home." *Id.* at ¶ 12. The trial court distinguished *DeCoteau* and found significant differences between *DeCoteau* and this case because here the young woman was a college student, knew the police were outside the door, and knew they wanted to come inside. On this basis, the trial court found by opening the door and allowing Officer Nagel inside, it was clear the young woman "was doing more than merely acquiescing to the police by letting them follow her into an apartment."

[¶ 13] The trial court also relied on *People v. Carpenter,* 120 Mich.App. 574, 327

N.W.2d 523 (1982) to support the finding that opening the door is adequate affirmative conduct to give consent to entry. In *Carpenter* two suspects were in the apartment, aware of the presence of the police outside the door. 327 N.W.2d at 526. The police knocked on the door, one of the suspects opened the door a crack, saw it was the police, then closed the door to remove the chain and opened the door completely. *Id.* The Michigan court found this action constituted consent to entry. *Id.* In this case the young woman did not open the door a crack initially and then remove a chain to open the door completely, an activity the Michigan court found to be adequate affirmative conduct for tacit consent to entry; rather she simply opened the door.

■ [¶ 14] As we stated in *Avila*, "[c]ontrary to the trial court's apparent reasoning, to sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police from entering." 1997 ND 142, ¶ 17, 566 N.W.2d 410. Absent some finding of a more specific act or conduct of the young woman which indicated affirmative consent, we cannot conclude she did anything more by opening the door. There is no record or finding of any affirmative act sufficient to establish consent to Officer Nagel's entry into the home. We have not held, and we are unaware of a holding in another jurisdiction, that opening the door with the knowledge a police officer is on the threshold, is an invitation to enter the home.

[¶ 15] Exigent circumstances provide another exception to the warrant requirement. The United States Supreme Court has determined that before agents of the government may "invade the sanctity of the home" the government bears the burden to demonstrate exigent circumstances exist that overcome the presumption of unreasonableness of a warrantless home entry. *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). We recently confirmed our definition of exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *DeCoteau*, 1999 ND 77, ¶ 15, 592 N.W.2d 579(quoting *State v. Nagel*, 308 N.W.2d 539, 543 (N.D.1981)).

■ [¶ 16] The trial court found even if Officer Nagel did not have consent to go beyond the doorway, he had probable cause and there were exigent circumstances that made it necessary for him to enter further into the apartment. The prosecution originally argued the smell of alcohol and admission by Dardis of being a minor constituted probable cause to believe a crime was being committed in Officer Nagel's presence and justified his entry into the home. The trial court rejected this on the basis of *Lee* in which we held probable cause to believe minors were illegally consuming alcohol was a relatively minor infraction and did not create exigent circumstances to justify a warrantless entry into a home. 1998 ND 126, ¶ 13, 580 N.W.2d 580 (relying on *Welsh*, 466 U.S. at 753, 104 S.Ct. 2091, "application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed.").

[¶ 17] However, the trial court did find the exigent circumstances of protecting the public's safety or helping someone in distress existed. The situation was tense because Dardis appeared to be intoxicated and made an aggressive move against the young man who had grabbed him. The court relied on the fact Officer Nagel was only a few feet away from this commotion and could easily diffuse the situation to justify the exception. Therefore, despite the fact this was not a life threatening emergency, the court decided it would be unreasonable to forbid a peace officer to

break up a fight occurring right in front of him.

[¶ 18] Key to the court's justification for this further entry into the apartment is the finding that Officer Nagel had the initial consent to be inside the apartment, only a few feet away from the interaction between Dardis and the other young man. Significantly, the interaction was not independent of Officer Nagel's presence in the apartment. Rather, the evidence reflects the altercation occurred because the young man grabbed Dardis to calm him down after the confrontation with the officer. Law enforcement's inappropriate actions, even if unintentional, cannot ordinarily create the exigent circumstances to justify the entry for the purpose of the suppression motion.

[¶ 19] At the time of Officer Nagel's entry into the home, there was no consent nor did any exigent circumstances exist. Absent one of these exceptions to the warrant requirement at the time of the entry, evidence gained in violation of the Fourth Amendment's protections against unreasonable searches and seizures is inadmissible under the exclusionary rule and must be suppressed. *State v. Kitchen*, 1997 ND 241, ¶ 9, 572 N.W.2d 106 (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

[¶ 20] We conclude the district court erred in denying Dardis's motion to suppress evidence. The convictions of the district court are reversed and the cases are remanded to allow Dardis to withdraw his guilty pleas.

[¶ 21] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.