2001 ND 175

**CITY OF FARGO, Plaintiff and Appellant,**

v.

**Megan Rae ELLISON, Defendant and Appellee.**

**No. 20010131.**

Supreme Court of North Dakota.

Nov. 2, 2001.

Stephen R. Dawson, Assistant City Prosecutor, Fargo, ND, for plaintiff and appellant.

Cash Hennessy Aaland, Fargo, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The City of Fargo ("City") appealed from an order suppressing evidence found as a result of a search without a warrant of Megan Rae Ellison's apartment. The City contends the district court erred in its decision the warrantless search of the apartment was performed without the consent of Ellison. In the alternative, the City contends that Ellison's age and identity can be established through an independent source without violating either the United States' or North Dakota's Constitution, and therefore should not have been suppressed. We conclude the district court's decision to suppress the evidence found in the search is not against the manifest weight of the evidence. We further conclude, however, if Ellison's age and identity can be produced independently of the illegal search, it should not be suppressed. Therefore, we affirm in part and reverse in part and remand.

I

[¶ 2] Fargo Police, responding to a complaint of a loud party, arrived at Megan Rae Ellison's apartment early in the morning of January 3, 2001. The two officers knocked on the door, and announced themselves. The door was answered by a guest of Ellison's. The police asked the guest if he was a resident of the apartment and the guest said he was not. The police then asked to speak to a resident. Ellison went to the door to speak with the police. The police asked if she was the apartment's resident and she answered in the affirmative. Next the police asked if they might enter the apartment. Ellison refused and attempted to close the door. One of the police officers placed his foot in the door preventing Ellison from closing it, but he did not otherwise enter the apartment. The police officers then

suggested that if Ellison did not cooperate she could be placed under arrest. The police officers further suggested they could get a search warrant, but a judge would be unhappy with Ellison if the police were forced to resort to this. Ellison then attempted to walk away from the door and withdraw deeper into her apartment. Ellison stopped when one of the police officers remarked she was being "feisty" and they would have to use handcuffs. Ellison returned to the door and continued to speak with the officers until a police sergeant arrived.

[¶ 3] The sergeant explained to Ellison that she had the right to refuse them permission to enter, but they could request a warrant. The trial court found Ellison may have interrupted the sergeant and consented to the search at this point, but the sergeant continued the explanation. The sergeant explained that a judge may or may not grant the warrant. Finally, Ellison relented and consented to the police entering her home. The police entered the apartment and conducted a search, which resulted in evidence of a minor possessing and or consuming alcohol, in violation of city ordinance. *See* Fargo N.D., Municipal Ordinance art. 10–01 § 01 (2000)("Minor Possessing"). The evidence included the identity and age of Ellison, who was then twenty years of age. Ellison was charged with this offense as well as with an infraction of the City's Noisy Parties ordinance. *See* Fargo N.D., Municipal Ordinance art. 10–07 § 01 (1999)("Noisy Party").

[¶ 4] Ellison appeared in Fargo municipal court and requested the case be transferred to district court. The Minor Possessing charge was transferred, but the Noisy Party infraction was not. Ellison was convicted by the municipal court of the Noisy Party infraction.

[¶ 5] Ellison moved the district court to suppress the evidence of Minor Possessing discovered during the police search of her apartment. Ellison asserted the evidence was the product of an illegal search because the police did not have a warrant to search her home, nor did the police conduct fall within any exception to the warrant requirement. The district court granted the motion and suppressed the evidence, stating in its findings, "Ms. Ellison did not feel free to close the door, to leave, to walk away, to deny them."

[¶ 6] In response, the City filed a document entitled "City's Objection to the Proposed Order," and a second document outlining the City's proposed evidence regarding Ellison's age and identity including:

1. A copy of the judgment of conviction from Fargo Municipal Court in which [Ellison] was convicted of violation of the City's loud party ordinance, which arose from this same occurrence, and/or;

2. Testimony of the manager of the apartment in which [Ellison] resides who would offer evidence concerning [her] name and age.

The district court, after hearing argument, ruled this evidence was produced as a result of the illegal search, and thus would not be admissible over Ellison's objection at trial.

II

[¶ 7] The North Dakota Century Code authorizes a city to appeal an order granting the suppression of evidence if the appeal is not for the purpose of delay, and the evidence is a substantial proof of a material fact in the case. N.D.C.C. § 29–28–07(5); *City of Wahpeton v. Desjarlais,* 458 N.W.2d 330, 332 (N.D.1990). In light of a trial court's important opportunity to observe and assess the credibility of witnesses, however, this Court accords great

deference to a trial court's decision to suppress evidence. *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538.

■ [¶ 8] Further, "[u]sually the circumstances which attend the giving of a confession or a consent are not completely agreed upon by law-enforcement officials and the accused; hence, the trial judge often must decide between conflicting evidence to form a picture in [his or her] own mind of the 'totality of the circumstances.' " *State v. Discoe*, 334 N.W.2d 466, 468 (N.D.1983). Therefore, "[w]e affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538.

### III

■ [¶ 9] "The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, as well as Article I, Section 8, of the North Dakota Constitution prohibit unreasonable searches and seizures." *City of Jamestown v. Dardis*, 2000 ND 186, ¶ 8, 618 N.W.2d 495. "A search occurs when the government intrudes upon an individual's reasonable expectation of privacy." *State v. Winkler*, 552 N.W.2d 347, 351 (N.D.1996). "When an individual possesses a reasonable expectation of privacy in a given area, the government must obtain a warrant before searching that area." *Id.*

■ [¶ 10] Warrantless searches and seizures in a home are "presumptively unreasonable." *City of Jamestown v. Dardis*, 2000 ND 186, ¶ 8, 618 N.W.2d 495 (explaining "[a] physical entry into a home is a chief evil against which the Fourth Amendment protects").

■■ [¶ 11] This presumption may be defeated, however, if the government shows the search or seizure was within a recognized exception to the warrant requirement. *See City of Jamestown v. Dardis*, 2000 ND 186, ¶ 9, 618 N.W.2d 495. One such exception is consent. *Id.* Therefore, if the government establishes there was consent for a search or seizure, the government action is not unreasonable and, accordingly, does not run afoul of either the United States' or North Dakota's Constitution.

■ [¶ 12] "In the absence of such an exception, evidence obtained in violation of the Fourth Amendment's protections against unreasonable searches must be suppressed as inadmissible under the exclusionary rule." *State v. Blumler*, 458 N.W.2d 300, 302 (N.D.1990). "Moreover, . . . any evidence derived as a result of the initial, illegally acquired evidence must also be suppressed." *Id.*

■ [¶ 13] In this case the City asserts Ellison voluntarily consented to the police request to enter and search her apartment; Ellison disputes this. "[W]hen the validity of a consent to search is called into question, the trial court must satisfy itself that the consent was given voluntarily before it can permit the use of evidence obtained from the search against the accused at trial." *State v. Discoe*, 334 N.W.2d 466, 467 (N.D.1983). "[T]he way in which the trial court is to make its determination on the issue of voluntariness is by examining the totality of the circumstances which surround the giving of a confession or consent to a search to see whether it is the product of an essentially free choice or the product of coercion." *Id.* "Under a 'totality of the circumstances' standard, although the existence or absence of certain factors concerning (1) the characteristics and condition of the accused at the time [he or she] confessed or

consented and (2) the details of the setting in which the consent or confession was obtained are significant in deciding voluntariness, no one factor in and of itself is determinative." *Id.* at 467–68.

[¶ 14] The district court found Ellison consented to the police entry and search of her apartment, but only after she was threatened with both arrest and handcuffing if she chose to exercise her constitutional right to refuse the police entry. Further, the district court found Ellison attempted to end the conversation with the police twice. Once by attempting to close her door and once by retreating from the open door and withdrawing within her apartment. Each of these efforts were wrongly thwarted by police. As a result, the district court found, "Ms. Ellison did not feel free to close the door, to leave, to walk away, to deny them." The district court reasoned the ultimate consent was, therefore, not voluntarily given. The district court's finding is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence. Thus, we affirm the district court's suppression of the evidence produced as a result of the search.

## IV

[¶ 15] The district court further suppressed both the copy of the judgment of conviction from the Fargo municipal court and the anticipated testimony of the manager of the apartment building in which Ellison resides. The district court reasoned both of the above were the product of the illegal search of Ellison's apartment and accordingly inadmissable at trial. We cannot agree.

[T]he exclusionary rule essentially operates as a judicial remedy or sanction against law enforcement intrusion into an individual's Fourth Amendment rights. By excluding evidence seized in violation of the Fourth Amendment, the exclusionary rule acts to deter police misconduct in making unreasonable searches and seizures, and to bolster judicial integrity by not allowing convictions based on unconstitutionally obtained evidence.

*State v. Wahl,* 450 N.W.2d 710, 714 (N.D. 1990) (citations omitted).

The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, *not a worse,* position [than] they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*State v. Winkler,* 1997 ND 144, ¶ 6, 567 N.W.2d 330 (quoting *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472(1988) which explained the principle of the independent source doctrine)(emphasis ours).

[¶ 16] After the police conducted the illegal search of Ellison's apartment, they issued a complaint and summons charging her with a violation of the Noisy Party ordinance and the Minor Possessing violation. To do this the police demanded, received and recorded Ellison's identity. The Minor Possessing charge was transferred to the district court, but the Noisy Party infraction was not. *See* N.D.C.C. § 12.1–32–03.1(1)(providing, generally a person charged with an infraction is not entitled to a jury). Though the municipal court went on to find a violation of the Noisy Party ordinance, the district court ruled the entry and search of Ellison's home was illegal. Therefore, all information derived from the search must be sup-

pressed. This does not include, however, the record of Ellison's identity found on the municipal court conviction, for the police were in the position to issue Ellison a citation for the violation of the Noisy Party ordinance from the moment they responded to the complaint.[1]

[¶ 17] The City ordinance prohibits any person from participating in a party in a residential area during certain times, which may be found to be unreasonably noisy by others in the area. *See* Fargo N.D., Municipal Ordinance art. 10–07 § 01 (1999). Thus, the police could have issued Ellison a citation for the Noisy Party the moment they saw her within the apartment, where the party was occurring. A guest or resident in an apartment, where music is "played so loudly as to cause complaints to the police, . . . may expect a knock at the door." *See State v. Ackerman*, 499 N.W.2d 882, 885 (N.D.1993). "And if the door is opened to a police officer, such a guest [or resident] may expect to be arrested for a crime being committed in the officer's presence at the time the door is opened" or as in this case cited for an infraction committed in the officer's presence. *Id.*

[¶ 18] Similarly, the police would have been within their authority to inquire as to Ellison's identity with the apartment manager, before they approached the apartment, let alone before they had illegally searched it. Therefore, the apartment manager's testimony regarding Ellison's identity as well as the record of her identity and age found on the municipal court conviction are both "wholly independent of any constitutional violation." *State v. Winkler*, 552 N.W.2d 347, 353 (N.D.1996). To suppress either piece of evidence would place the police in a worse position than they occupied before the illegal search occurred. By doing this the district court goes too far. Accordingly, we reverse the district court's suppression of the copy of the municipal court conviction and the manager's anticipated testimony.

[¶ 19] We, therefore, affirm in part and reverse in part and remand.

[¶ 20] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.

---

1. Our decision is limited to evidence of identity and age and should not be read to suggest the municipal court record may be used to "prove the character of a person in order to show action in conformity therewith." *See* N.D.R.Ev. 404(b).