2013 ND 155

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**William Joseph NICKEL, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee**

**v.**

**Ryan Michael Zueger, Defendant and Appellant.**

**Nos. 20120395, 20120418.**

Supreme Court of North Dakota.

Aug. 29, 2013.

Julie A. Lawyer (argued), Burleigh County Assistant State's Attorney, Bismarck, N.D., and Paul R. Emerson (on brief), Bismarck, N.D., for plaintiff and appellee.

Garrett D. Ludwig, Mandan, N.D., for defendant and appellant William Joseph Nickel.

Richard E. Edinger, Fargo, N.D., for defendant and appellant Ryan Michael Zueger.

SANDSTROM, Justice.

[¶ 1] Ryan Zueger and William Nickel appeal from criminal judgments entered after the district court denied their motions to suppress evidence and a jury found them guilty of conspiracy to deliver controlled synthetic cannabinoids. We conclude the district court erred in denying the motions to suppress, and we reverse the convictions.

I

[¶ 2] William Nickel and Zueger are the owners of Big Willies ATP. On October 4, 2011, William Nickel's sister, Casandra Nickel, brought a package to We Ship, Etc., a United Parcel Service ("UPS") shipping outlet in Mandan, for shipment by next-day-air service from Big Willies to Intermedia in California. According to Kent Danielson, the owner of We Ship, he asked Casandra Nickel about the contents of the package, and she appeared nervous and did not respond immediately, but ultimately told Danielson the package contained returnable merchandise. Danielson had previously refused to ship packages for Big Willies because of concerns about the legality of the items shipped, and he became suspicious about the contents of the package in conjunction with his observations of Casandra Nickel and the $143.55 cost of the next-day-air service.

[¶ 3] Danielson has a store policy permitting him to open and inspect any suspicious packages, and he went to the Mandan Police Department to report the suspicious package so law enforcement officers could be present when he opened the package at We Ship. The Mandan Police Department informed Bureau of Criminal Investigation Special Agent Casey Miller about the package, and four officers working with the Metro Area Narcotics Task Force, including Agent Miller, went to the Mandan Police Department to talk to Danielson. Danielson had not brought the package to the police department, and the four officers working with the task force accompanied him to We Ship to examine the package.

[¶ 4] When the officers arrived at We Ship, Danielson showed them the $143.55 credit card receipt signed by Casandra Nickel for next-day-air service along with

a bill of lading stating the package was being sent from Big Willies to Intermedia in California. In the presence of the officers, Danielson opened the package and unfolded the flaps of the box, stating to the effect, "See, I told you," or "I knew it," and stepping aside without touching or removing the contents of the package. According to Agent Miller, after Danielson opened the package and stepped aside, the officers saw in plain view several large Ziploc bags containing plant material in labeled clear plastic tubes.

[¶ 5] Agent Miller testified he "had no idea what the plant material was," but knew Big Willies was a "smoke shop" selling items used for ingestion of tobacco and controlled substances and Big Willies had sold controlled synthetic cannabinoids in the past. According to Agent Miller, the plant material had the appearance of marijuana, but he confirmed it was not marijuana. Agent Miller testified that on the basis of his experience, a synthetic cannabinoid is usually in a powder form, which can be added to water and soaked in plant material, resulting in synthetic cannabinoid on the plant material. According to Agent Miller, the term "synthetic cannabinoid" includes both legal and illegal substances and he was not able to look at the contents of this package and determine whether the plant material was legal or illegal. Agent Miller testified he believed the plant material was a synthetic cannabinoid but he did not know whether it was legal or illegal.

[¶ 6] After Danielson opened the package and the officers observed the contents, the officers inventoried the package without a warrant, removing and opening 15 Ziploc bags that contained 315 plastic tubes. The majority of the plastic tubes were labeled "Green Cross Private Reserve." Agent Miller testified he thereafter took the contents of one plastic tube to the state crime lab for testing because there was no standard field test for determining whether the plant material contained a controlled substance. The other law enforcement officers took the rest of the contents of the package to the Bismarck law enforcement center. Later that evening, an employee of the state crime lab informed Agent Miller the plant material tested negative for any controlled substances. Agent Miller informed Danielson about the test results, and law enforcement officers resealed the package on October 4, 2011, and delivered it to UPS in Bismarck for shipping to its destination in California.

[¶ 7] On the morning of October 5, 2011, an employee of the state crime lab informed Agent Miller the crime lab may have conducted the wrong test on the plant material and the material may contain a controlled substance. An employee of the state crime lab later informed Agent Miller that preliminary testing indicated a strong likelihood the substance contained JWH–122, a controlled substance. Agent Miller contacted Danielson to retrieve the package, which was out for delivery in California, and Danielson had the package returned to We Ship the next day. Later on October 5, 2011, an employee of the state crime lab confirmed the plant material contained JWH–122, and Agent Miller retrieved the package from We Ship the next day.

[¶ 8] On October 6, 2011, law enforcement officers contacted William Nickel and Zueger about the package. According to William Nickel and Zueger, they had been purchasing Green Cross Private Reserve from Intermedia in California since August 2011. They claimed they were concerned about the legality of the product, but were initially informed by representatives of Intermedia that it was not illegal in North Dakota. They claimed a representative of

Intermedia subsequently informed them North Dakota was on the "no send" list for Green Cross Private Reserve and the product needed to be returned to Intermedia for a refund. According to William Nickel and Zueger, the product was packaged and delivered to We Ship on October 4, 2011, for shipment by next-day-air service to Intermedia in California.

[¶ 9] The State charged Zueger, William Nickel, and Casandra Nickel with conspiracy to deliver controlled synthetic cannabinoids by agreeing to arrange for the shipment or delivery of the substance to another. The defendants moved to suppress evidence allegedly obtained in violation of their constitutional rights, claiming the package had been unlawfully searched and seized without a warrant. The district court denied the defendants' motions to suppress, ruling Danielson conducted a private party search when he opened the package in the presence of law enforcement officers at We Ship. The court decided the officers' information and knowledge from the opened package was sufficient to establish probable cause and the plain view exception to the warrant requirement permitted the warrantless seizure of the contents of the package. The court decided the subsequent removal of a single plastic tube from the package and testing at the state crime lab was not a search under the Fourth Amendment and any permanent loss of the substance was de minimis. The court ruled a second warrantless search and seizure of the package after the state crime lab initially indicated the substance was not illegal and the package was returned to North Dakota from California was justified by exigent circumstances and by the fact the defendants did not have a reasonable expectation of privacy in the package after law enforcement officers lawfully viewed the contents of the package at We Ship.

[¶ 10] After the State presented its evidence at a jury trial, the district court granted Casandra Nickel's motion for judgment of acquittal under N.D.R.Crim.P. 29, and the jury thereafter found William Nickel and Zueger guilty of conspiracy to deliver controlled synthetic cannabinoids to another.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals from the criminal convictions were timely under N.D.R.App.P. 4(b), and we have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

II

[¶ 12] William Nickel and Zueger initially argue the district court erred in denying their motions to suppress. When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). A district court's findings of fact in a suppression hearing "will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the ... court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.* Although underlying factual disputes are findings of fact, the ultimate conclusion of whether the facts meet a particular legal standard is a question of law, fully reviewable on appeal. *State v. Albaugh*, 2007 ND 86, ¶ 8, 732 N.W.2d 712.

[¶ 13] The Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, and N.D. Const. art. I, § 8, protect individuals from unreasonable searches and seizures. *State v. Wanzek*, 1999 ND 163, ¶ 7, 598 N.W.2d 811. Al-

though Zueger's appellate brief cites both the federal and state constitutional provisions, neither party has marshaled a separate argument under the state constitutional provision, and we treat the federal and state provisions synonymously. *See State v. Lanctot*, 1998 ND 216, ¶ 5 n. 1, 587 N.W.2d 568; *State v. Kunkel*, 455 N.W.2d 208, 209 n. 2 (N.D.1990).

■ [¶ 14] The Fourth Amendment of the United States Constitution gives people the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The wrapped package, which was brought to We Ship for private interstate shipment, is an "effect" entitled to protection from unreasonable searches and seizures under the Fourth Amendment. *See United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *State v. Ressler*, 2005 ND 140, ¶ 10, 701 N.W.2d 915.

A

■ [¶ 15] William Nickel first argues Danielson's initial opening of the package at We Ship in the presence of the law enforcement officers was a search by a governmental agent and was not a search by a private party.

[¶ 16] The United States Supreme Court "has ... consistently construed [the Fourth Amendment protection against unreasonable searches and seizures] as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652 (quoting *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackman, J., dissenting)). *See Ressler*, 2005 ND 140, ¶ 10, 701 N.W.2d 915.

[¶ 17] In addressing Danielson's actions, the district court said:

> In this case, Danielson made the initial contact with law enforcement indicating that he was concerned with the legality of a package dropped off by Casandra from Big Willie's ATP. Danielson told law enforcement officers that he had previously refused to ship packages from Big Willie's ATP, due to similar concerns. There is a store policy at We Ship Etc. allowing Danielson, not law enforcement, to open concerning or suspicious packages. Danielson made the decision to open the package. It does not appear that he felt obligated or was ordered to make this decision. Although law enforcement officers were present for the sole purpose of viewing the contents of the package, there is no indication that Danielson was acting at the behest of law enforcement.

> Furthermore, Danielson disclosed the contents of the package to law enforcement officers, and there is no indication that law enforcement officers "exceeded the scope of the private party search during [their] initial examination." *Ressler*, 2005 ND 140, ¶ 10, 701 N.W.2d 915.

> For these reasons, the search of the package from Big Willie's ATP was a search by a private party and no constitutional protections were implicated.

[¶ 18]   Danielson has a history with law enforcement officers about packages brought to We Ship. *See Ressler,* 2005 ND 140, ¶ 2, 701 N.W.2d 915.   The district court found Danielson initially contacted law enforcement officers on his own initiative and made the decision to open the package under his store policy.   Although the law enforcement officers were present to view the contents of the package when Danielson opened it, the court expressly found Danielson was not acting at their behest.   William Nickel has not cited any factual circumstances to show Danielson's initial action was anything but private party action.   Sufficient competent evidence in the record supports the district court's findings and determination that Danielson's conduct in opening the package was not governmental action implicating constitutional protections under the Fourth Amendment.   On this record, we conclude the district court's decision is not against the manifest weight of the evidence, and we reject William Nickel's claim that Danielson's conduct was a search by a governmental official.

## B

[¶ 19]   William Nickel and Zueger argue the district court erred in denying their motions to suppress the contents of the shipped package because the law enforcement officers violated the Fourth Amendment in conducting a warrantless search and seizure of the package after Danielson opened the package and stepped aside.

[¶ 20]   "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Jacobsen,* 466 U.S. at 113, 104 S.Ct. 1652.   "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id. See Ressler,* 2005 ND 140, ¶ 12, 701 N.W.2d 915.

[¶ 21]   In *State v. Ackerman,* 499 N.W.2d 882, 886 n. 5 (N.D.1993) (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)), this Court reiterated a well-established principle for searches and seizures under the Fourth Amendment:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.   Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

[¶ 22]   The Fourth Amendment establishes a strong preference for law enforcement officers to obtain warrants.   *See State v. Dodson,* 2003 ND 187, ¶ 27, 671 N.W.2d 825.   A warrantless search or seizure is constitutionally impermissible unless it falls within a recognized exception to the warrant requirement. *State v. Salter,* 2008 ND 230, ¶ 6, 758 N.W.2d 702; *State v. Woinarowicz,* 2006 ND 179, ¶ 21, 720 N.W.2d 635; *State v. Genre,* 2006 ND 77, ¶ 17, 712 N.W.2d 624.   Absent an exception to the warrant requirement, the exclusionary rule requires suppression of evidence obtained in violation of the Fourth Amendment's protections against warrantless searches or seizures.   *State v. Haibeck,* 2004 ND 163, ¶ 9, 685 N.W.2d 512.   The State has the burden of showing a warrantless search or seizure falls within a recognized exception to the warrant requirement. *State v. Mitzel,* 2004 ND 157, ¶ 12, 685 N.W.2d 120; *State v. Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410.   As relevant to this case, recognized exceptions to the warrant re-

quirement include plain view, exigent circumstances, and inventory searches. *See Horton v. California*, 496 U.S. 128, 133–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Ressler*, 2005 ND 140, ¶¶ 22–24, 701 N.W.2d 915; *State v. Garrett*, 1998 ND 173, ¶ 16, 584 N.W.2d 502; *State v. DeCoteau*, 1999 ND 77, ¶ 14, 592 N.W.2d 579.

[¶ 23] In *Ressler*, 2005 ND 140, ¶ 2, 701 N.W.2d 915, we addressed conduct by a law enforcement officer after Danielson opened a suspicious package left by the defendant, Ressler, at We Ship for next-day-air service to California. After Danielson opened the package, he called the Mandan Police Department and an officer went to We Ship and observed the opened package. *Id.* at ¶¶ 2–3. The officer wanted to conduct a canine sniff of the package, but the We Ship store was too small for that test, and without a warrant the officer transported the package to a nearby law enforcement center for the test, where the canine alerted on the package. *Id.* at ¶ 4. Without obtaining a warrant, the officer thereafter inventoried the contents of the package, finding $9,800 in bills, and officers later found drug paraphernalia during a warrantless search of garbage at Ressler's residence. *Id.* On the basis of evidence found during the garbage search, law enforcement officers obtained and executed a search warrant for Ressler's residence, which uncovered additional drug paraphernalia, and Ressler was charged with possession of drug paraphernalia found in his home. *Id.* at ¶ 5.

[¶ 24] We said that when the officer decided to move the package from We Ship to the nearby law enforcement center for the canine test, the officer's suspicion, viewed through the prism of his training in narcotics enforcement, was reasonable. *Ressler*, 2005 ND 140, ¶ 11, 701 N.W.2d

915. We also concluded the officer's movement of the package to the nearby law enforcement center constituted a "full-fledged seizure" under the Fourth Amendment. *Id.* at ¶¶ 14, 19. We said that conclusion recognized the officer exercised meaningful interference with Ressler's minimal, yet ever-present possessory right in the shipped package and provided some mechanism to check what would otherwise be nearly unrestrained governmental power to temporarily confiscate any shipped package. *Id.* at ¶ 14. We concluded, however, the officer's reasonable suspicion did not permit the officer to transport the seized package from the place where the suspicion arose, We Ship, to the law enforcement center. *Id.* at ¶¶ 15–20. In assessing the extent of the officer's actions, we explained that the officer:

> had reasonable suspicion to suspect Ressler's package, and this level of suspicion would have justified a decision to detain the package at We Ship pending further investigation. By transporting the package, however, police executed the seizure in a manner we believe is contrary to the constitutional prohibition against unreasonable seizures.
>
> A seizure of a package based on reasonable suspicion affords government officials less command, dominion, or control over the package than they would possess if executing a full-fledged seizure based on probable cause or a warrant. A contrary conclusion would distend the rationale for a *Terry* stop to a point where it envelops a seizure based on probable cause or a seizure supported by a warrant. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Police could not seize Ressler's package to a greater extent than by placing it in their exclusive control, removing it from the location where it was submitted for shipping, and transporting it to a law enforcement center. This

full-fledged seizure required either probable cause supported by an exception to the warrant requirement or a warrant to be valid. *[United States v.] Place*, 462 U.S. [696,] 701–02, 103 S.Ct. 2637 [77 L.Ed.2d 110 (1983)]; *see Garmon v. Foust*, 741 F.2d 1069, 1073–74 [ (8th Cir. 1984) ] (finding exigent circumstances existed where a shipped parcel could be lost or mistakenly delivered). A *Terry* stop of a package is distinguishable from a full-fledged seizure supported by probable cause, and we hold reasonable suspicion was an inadequate basis upon which to transport Ressler's package to the law enforcement center.

*Ressler*, at ¶¶ 18–19.

[¶ 25] In *Ressler*, 2005 ND 140, ¶ 21, 701 N.W.2d 915, the officer also inventoried the package at the law enforcement center after the canine alerted to the package. We recognized the canine alert established probable cause, but we held the officer's action in thereafter searching the package under the auspices of an inventory search was for the purpose of investigation and was not an inventory search for the purpose of protecting or safeguarding the interests of the State or the defendant. *Id.* at ¶¶ 22–23. We held absent a warrant or a valid exception to the warrant requirement, the search of the package at the law enforcement center violated the Fourth Amendment. *Id.* at ¶¶ 23–24.

[¶ 26] Our decision in *Ressler*, 2005 ND 140, ¶ 19, 701 N.W.2d 915, recognized the removal of the package from We Ship to a law enforcement center for testing was a full-fledged seizure and required either probable cause supported by an exception to the warrant requirement or a warrant to be valid. We concluded that although the officer legitimately observed the contents of the package during the private-party search, the officer's movement of the package to the law enforcement center was

a seizure that was not reasonable, and the evidence flowing from the seizure, the positive canine alert and the subsequent warrantless search of the package, must be suppressed as fruit of the poisonous tree. *Id.* at ¶ 25.

[¶ 27] Here the district court decided the law enforcement officers' seizure of the contents of the package was supported by probable cause and a warrant was not required under the plain view exception to the warrant requirement, stating:

In this case, Miller stated that within the open package there were several clear packages that contained numerous clear tubes. He testified that the tubes were labeled, most as "Green Cross Private Reserve," and that each clear tube contained a plant material. He stated this plant material had the appearance of marijuana, but when examined closer it was something different. Miller also testified as to his qualifications including the DEA basic drug school, the BCI drug school, and other various trainings to aid in the identification of controlled substances. Miller testified that synthetic cannabinoids had become very popular in the area and he was aware that they had previously been sold at Big Willie's ATP.

The foregoing information viewed as a whole was sufficient to establish probable cause; however, in order to validly seize the package the existence of probable cause must be accompanied by an exception to the warrant requirement. [*Ressler*,] at ¶ 19.

*Plain View Exception.* "It is well established law that probable cause alone does not justify a warrantless search of a package, absent an exception to the warrant requirement.["] *Id.* at ¶ 22. There are several exceptions to the warrant requirement including, the plain view exception. *See* 68 Am.Jur.2d

Searches and Seizures § 114 (2012) (discussing the numerous exceptions to the search warrant requirement); *see also Horton v. California,* 496 U.S. 128, 133–40 [110 S.Ct. 2301, 110 L.Ed.2d 112] (1990) (indicating that under certain circumstances police may seize evidence in plain view without a warrant).

The package opened by Danielson had approximately fifteen (15) one (1) gallon clear ziploc bags. Each of these bags were filled with several clear tubes. The clear tubes contained a plant like material, which was immediately visible to the law enforcement officers once the package was cut open. It is undisputed that there was a warrantless seizure of the package; however, for the reasons stated above the seizure was supported by probable cause and the plain view exception to the warrant requirement.

[¶ 28] Assuming without deciding the law enforcement officers had probable cause immediately after Danielson opened the package at We Ship and stepped aside to permit the officers to look into the package, we conclude plain view does not justify the warrantless seizure of the package for testing of the contents of one plastic tube at the state crime lab and the warrantless seizure of the rest of the contents of the package for transport to the Bismarck law enforcement center.

[¶ 29] In *State v. Garrett,* 1998 ND 173, ¶ 16, 584 N.W.2d 502 (quoting *Coolidge,* 403 U.S. at 465, 91 S.Ct. 2022), we said that "[p]lain view alone, however, is never enough to justify the warrantless search or seizure of evidence [and] ... 'no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." ' " We explained that officers with plain view of contraband which gives rise to probable cause are not immunized from the rule that a " 'warrantless search and seizure is unreasonable unless it falls

within one of the exceptions to the constitutional requirement that a search be conducted pursuant to a valid search warrant.' " *Id.* (quoting *State v. Koskela,* 329 N.W.2d 587, 591 (N.D.1983)).

[¶ 30] In *Horton v. California,* 496 U.S. 128, 133–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court distinguished plain view for searches and for seizures and discussed plain view in the context of seizures. *See also* 1 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 2.2(a) (5th ed.2012). The *Horton* Court described essential predicates for a valid warrantless seizure of evidence, stating an officer must not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, the object must not only be in plain view, its incriminating character also must be immediately apparent, and the officer also must have a lawful right of access to the object itself. 496 U.S. at 136–37, 110 S.Ct. 2301.

[¶ 31] Agent Miller testified at the suppression hearing he "had no idea what the plant material was" in the package or whether it was a controlled substance, because there was no way to tell by visual observation. The district court found that "[b]elieving that the plant material may be a controlled substance, Miller removed a single tube" and took it to the state crime lab for testing. The court also said Agent Miller "thought the plant material might be a controlled substance." This record does not establish the immediate incriminating character of the seized evidence, and the State has cited no exigent circumstances justifying the warrantless seizure of the package at We Ship. In *DeCoteau,* 1999 ND 77, ¶ 15, 592 N.W.2d 579 (quoting *City of Fargo v. Lee,* 1998 ND 126, ¶ 10, 580 N.W.2d 580), we said "exigent circumstances 'has been defined as an

emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.' " Here Agent Miller testified the officers "could have applied for a warrant, ... but ... didn't." The facts in this case do not rise to the level of exigent circumstances justifying the warrantless seizure of the package at We Ship, and we conclude the district court erred in relying on plain view or exigent circumstances to justify the warrantless seizure of the package at We Ship.

[¶ 32]   To the extent the law enforcement officers inventoried the package at We Ship without obtaining a warrant, the officers' actions were in the midst of a criminal investigation, and there is no evidence the officers were protecting or safeguarding their interests or the property owners' interests. *See Ressler*, 2005 ND 140, ¶¶ 23–24, 701 N.W.2d 915 (rejecting claim of exception to warrant requirement for inventory search made during midst of investigation and not for purpose of protecting or safeguarding officer's interests or owner's property interests). As in *Ressler*, at ¶¶ 23–24, the inventory exception provides no justification for the warrantless seizure of the package at We Ship.

[¶ 33]   Under *Ressler*, 2005 ND 140, ¶ 10, 701 N.W.2d 915, the law enforcement officers legitimately observed the contents of the package after Danielson opened it. The officers' subsequent warrantless seizure of the contents of the package at We Ship and removal to the law enforcement center and to the state crime lab, however, contravened the Fourth Amendment. In the absence of a recognized exception to the warrant requirement, we conclude the district court erred in denying the motions to suppress the evidence stemming from the warrantless seizure of the package at We Ship.

C

[¶ 34]   Because of our resolution of the suppression issue, we need not address other issues raised by William Nickel and Zueger about claimed prosecutorial misconduct during final argument and the sufficiency of the evidence.

III

[¶ 35]   We reverse the criminal judgments.

[¶ 36]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.