2015 ND 230

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Edward MORALES, Defendant and Appellant.**

**No. 20140407.**

Supreme Court of North Dakota.

Sept. 17, 2015.

Nathan K. Madden, Assistant State's Attorney, Williston, N.D., for plaintiff and appellee.

Lee M. Grossman, Valley City, N.D., for defendant and appellant.

Ken R. Sorenson, Assistant Attorney General, Bismarck, N.D., for amicus curiae Attorneys for North Dakota Attorney General.

SANDSTROM, Justice.

[¶ 1] Edward Morales appeals from a judgment entered upon a conditional guilty plea to causing death while operating a vehicle under the influence of alcohol, reserving his right to appeal the denial of his motion to suppress the results of a warrantless blood-alcohol test. Morales argues there was not sufficient evidence to support the district court's decision that

exigent circumstances permitted the warrantless blood-alcohol test and N.D.C.C. §§ 39–20–01 and 39–20–03 are unconstitutional. We conclude the warrantless blood-alcohol test was authorized under the exigent circumstances exception to the warrant requirement, and we affirm the judgment.

## I

[¶ 2] At about 10:28 p.m., on November 28, 2013, law enforcement officers and emergency medical personnel were dispatched to a single-car accident in a RV trailer park about four miles north of Williston. According to Williston Police Officer Jacob Hendricks, because the accident occurred outside the Williston city limits on Thanksgiving, he responded to "stand by at the crash scene and offer aid until the sheriff's office could arrive." He testified he was the first officer on the scene, and he observed a passenger in a vehicle that had hit a parked gooseneck trailer. The passenger was not responsive and was pronounced dead at the scene. According to Officer Hendricks, the sheriff's office was ordinarily responsible for investigating accidents outside the Williston city limits, but the highway patrol investigates accidents involving injuries and fatalities. Morales was identified as the driver of the vehicle. Officer Hendricks testified he detected the odor of alcohol emanating from Morales but he did not talk to him because he was receiving emergency medical care and was strapped to a back board and transported by ambulance to a Williston hospital.

[¶ 3] North Dakota Highway Patrol Officer Scott Stoczynski arrived at the accident scene at about 10:34 p.m., after Morales had been transported to the hospital. According to Officer Stoczynski, Williston Police Officer Sam Aide informed him that Morales had been walking around the vehicle after the accident, that Morales had received emergency medical care and had been transported to the hospital, and that Officer Hendricks said Morales smelled of alcohol. Officer Stoczynski testified only two highway patrol officers were working in the Williston area because of the Thanksgiving holiday and he remained at the scene to investigate the accident. Officer Hendricks returned to his patrol duties, but was subsequently dispatched to the Williston hospital at the request of Officer Stoczynski to watch Morales. At the hospital, Officer Hendricks observed Morales was unconscious, but again detected he smelled of alcohol. Meanwhile, Officer Stoczynski remained at the accident scene and investigated the crash, measuring markings on the driving surface, taking pictures, locating debris, and inspecting and photographing vehicles. Officer Stoczynski testified highway patrol officers specialize in accident reconstruction and his investigation ultimately revealed Morales' vehicle was traveling at a high rate of speed and failed to negotiate a turn and avoid or brake for a parked gooseneck trailer that was loaded with lumber.

[¶ 4] Officer Stoczynski testified it took him about an hour and a half to complete the on-scene accident investigation, and he then proceeded to the hospital, arriving at about 12:15 a.m. According to Officer Stoczynski, when he arrived at the hospital Morales had been intubated and was unconscious and not responsive. Officer Stoczynski testified he smelled the odor of alcohol coming from Morales and read him *Miranda* warnings and an implied consent advisory. He testified he arrested Morales and requested a warrantless blood draw from him, which was performed by hospital personnel at about 12:30 a.m.

[¶ 5] The warrantless blood draw revealed a blood-alcohol concentration above the legal limit, and the State charged Mor-

ales with causing death while operating a vehicle under the influence of alcohol. Morales moved to suppress the results of the warrantless blood draw, arguing it constituted an illegal search and seizure. After an evidentiary hearing, the district court denied Morales' motion to suppress, ruling exigent circumstances justified the warrantless blood draw and, even if exigent circumstances did not exist, Morales was deemed to have consented to the test under N.D.C.C. § 39–20–03, which provides that an unconscious driver is deemed to have not withdrawn the driver's implied consent to a test for intoxication. Morales conditionally pled guilty to the charge, reserving his right to appeal the denial of his motion to suppress the results of the warrantless blood-alcohol test.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Morales' appeal is timely under N.D.R.App.P. 4(b). We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 7] In *State v. DeCoteau*, 1999 ND 77, ¶ 6, 592 N.W.2d 579 (citations omitted), we described our standard of review of motions to suppress:

> We give deference to the district court's findings of fact when reviewing a motion to suppress evidence. The district court is in a superior position to assess the credibility of witnesses and weigh the evidence, and conflicts are resolved in favor of affirmance. A district court's findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence. Matters of law are fully reviewable by this Court on appeal.

## III

[¶ 8] Unreasonable searches and seizures are prohibited by the Fourth Amendment of the United States Constitution, made applicable to the states under the Fourteenth Amendment, and by Article I, Section 8, of the North Dakota Constitution. *State v. Birchfield*, 2015 ND 6, ¶ 8, 858 N.W.2d 302. The administration of a blood test to determine blood-alcohol concentration is a search under those constitutional provisions. *Id.* Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement. *City of Fargo v. Wonder*, 2002 ND 142, ¶ 18, 651 N.W.2d 665. "In suppression cases, the defendant has the initial burden of establishing a prima facie case that the evidence was illegally seized." *State v. Glaesman*, 545 N.W.2d 178, 182 n. 1 (N.D.1996). Thereafter, the State has the burden of proving a warrantless search falls within a recognized exception to the warrant requirement. *State v. Nickel*, 2013 ND 155, ¶ 22, 836 N.W.2d 405. Absent an exception to the warrant requirement, the exclusionary rule requires suppression of evidence obtained in violation of the federal and state constitutions' protections against warrantless searches or seizures. *Id.* Exceptions to the warrant requirement include consent and exigent circumstances. *DeCoteau*, 1999 ND 77, ¶¶ 9, 14, 592 N.W.2d 579.

## IV

[¶ 9] Morales argues the district court erred in ruling the exigent circumstances exception to the warrant requirement permitted the warrantless blood draw.

[¶ 10] Exigent circumstances are "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to fore-

stall the imminent escape of a suspect or destruction of evidence." *DeCoteau*, 1999 ND 77, ¶ 15, 592 N.W.2d 579 (quoting *City of Fargo v. Lee*, 1998 ND 126, ¶ 10, 580 N.W.2d 580).

[¶ 11] In *Missouri v. McNeely*, — U.S. —, 133 S.Ct. 1552, 1558–59, 185 L.Ed.2d 696 (2013) (citations omitted), the United States Supreme Court discussed exigent circumstances in the context of a warrantless blood test and an argument that the natural dissipation of alcohol in a driver's bloodstream, by itself, satisfied the requirements for exigent circumstances:

> "One well-recognized exception," and the one at issue in this case, "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to provide emergency assistance to an occupant of a home, engage in "hot pursuit" of a fleeing suspect, or enter a burning building to put out a fire and investigate its cause. As is relevant here, we have also recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence. While these contexts do not necessarily involve equivalent dangers, in each a warrantless search is potentially reasonable because "there is compelling need for official action and no time to secure a warrant."
>
> To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances.

In *McNeely*, at 1558–60, the Court discussed a prior case, *Schmerber v. Califor-*nia, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), dealing with exigent circumstances and a warrantless blood draw from an automobile driver involved in an accident while suspected of driving under the influence of alcohol.

[¶ 12] In *Schmerber*, 384 U.S. at 758, 769, 86 S.Ct. 1826, the driver was hospitalized following an automobile accident, and a police officer smelled alcohol on the driver's breath at the accident scene and at the hospital. The officer arrested the driver at the hospital and, without obtaining a warrant or the driver's consent, directed a physician to take a blood sample from the driver. *Id.* at 758–59, 769, 86 S.Ct. 1826. In concluding the warrantless blood draw was justified by exigent circumstances, the United States Supreme Court explained the officer might reasonably have believed he was confronted with an emergency in which delay necessary to obtain a warrant threatened the destruction of evidence by the dissipation of alcohol from the driver's blood system. *Id.* at 770, 86 S.Ct. 1826. The Court said the time required to take the driver to the hospital and to investigate the accident scene left "no time to seek out a magistrate and secure a warrant" and concluded the special facts in that case indicated the attempt to secure evidence of blood-alcohol content was an appropriate incident to the driver's arrest. *Id.* at 770–71, 86 S.Ct. 1826. The Court concluded the blood draw was a reasonable test and an effective means of determining blood-alcohol content under the circumstances because it involved virtually no risk, trauma, or pain and was performed in a reasonable manner by a physician in a hospital environment according to accepted medical practices. *Id.* at 771–72, 86 S.Ct. 1826. The Court cautioned, however, that its conclusion was based "only on the facts of the present record," and its holding "that the Constitution does not forbid

the State's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.* at 772, 86 S.Ct. 1826.

[¶ 13] In *McNeely,* 133 S.Ct. at 1559–60, 1568, the United States Supreme Court rejected the State's argument that the natural dissipation of alcohol in a driver's bloodstream, by itself, constitutes exigent circumstances sufficient to justify conducting a warrantless blood test. In that case, the State "claim[ed] that so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant." *Id.* at 1560. The Court noted "that because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results," but nevertheless refused to depart from a case-by-case assessment of exigency to adopt a categorical exception to the warrant requirement. *Id.* at 1561. The Court explained that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber,* it does not do so categorically." *Id.* at 1563. The Court declined to speculate on all the relevant factors that could be taken into account in determining exigent circumstances, observing:

> Although the Missouri Supreme Court referred to this case as "unquestionably a routine DWI case," the fact that a particular drunk-driving stop is "routine" in the sense that it does not involve " 'special facts,' " such as the need for the police to attend to a car accident, does not mean a warrant is required. Other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the

availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

> . . . .

> It suffices to say that the metabolization of alcohol in the bloodstream and the ensuing loss of evidence are among the factors that must be considered in deciding whether a warrant is required. No doubt, given the large number of arrests for this offense in different jurisdictions nationwide, cases will arise when anticipated delays in obtaining a warrant will justify a blood test without judicial authorization, for in every case the law must be concerned that evidence is being destroyed.

*McNeely,* at 1568 (citations omitted).

[¶ 14] Here we conclude the district court's ruling regarding exigent circumstances is supported by sufficient competent evidence and is not against the manifest weight of the evidence. The circumstances indicate this was not a "routine" drunk driving stop as in *McNeely,* 133 S.Ct. at 1568; rather, Morales was driving a motor vehicle involved in a fatal accident. Officer Stoczynski testified that because of the Thanksgiving holiday there were only two highway patrol officers working in the Williston area on the night of the accident and the other law enforcement agencies were understaffed. There was evidence Morales had driven his vehicle into the hitch of a gooseneck trailer

with sufficient speed to rip the roof and back end off his vehicle. Officer Hendricks detected the odor of alcohol on Morales at the scene of the accident, but Morales was being provided emergency medical care and was transported to a hospital before he could be questioned by law enforcement. According to Officer Hendricks, he returned to his patrol duties and was not involved in any further investigation at the accident scene, but was subsequently dispatched to the hospital by the highway patrol to watch Morales, and he detected the odor of alcohol on an unconscious and unresponsive Morales at the hospital. Officer Hendricks testified he arrived at the hospital "around midnight, or shortly thereafter," but also testified he observed Morales for "approximately an hour." Officer Stoczynski arrived at the accident scene after Morales had been transported to the hospital and completed his investigation of the accident in about an hour and a half. He testified highway patrol officers have specialized crash reconstruction training that other law enforcement agencies do not have and accidents involving fatalities require thorough and immediate investigation. Officer Stoczynski testified his investigation revealed Morales' vehicle was traveling at a high rate of speed and failed to negotiate a turn and avoid or brake for a gooseneck trailer that was loaded with lumber. The record does not reflect that Officer Hendricks was informed of the results of Officer Stoczynski's investigation while Officer Hendricks was with Morales at the hospital. Officer Stoczynski, however, was advised that Officer Hendricks had detected the odor of alcohol on Morales. After finishing his investigation of the accident scene, Officer Stoczynski arrived at the hospital at about 12:15 a.m., where he also detected the odor of alcohol on an unconscious and unresponsive Morales. Officer Stoczynski testified he was not certain about the availability of personnel for obtaining a warrant at that hour on Thanksgiving, but he was concerned about the two-hour window for chemical testing, and the evidence indicates Morales' blood test was taken about two hours after he had driven. *See* N.D.C.C. § 39–08–01(1)(a) and (3) (a person is guilty of crime if that person has an alcohol concentration of at least eight one-hundreds of one percent by weight at the time of performance of chemical test within two hours after driving).

[¶ 15] Contrary to Morales' argument, this record does not support a claim of unnecessary delay in taking the blood test. Rather, the circumstances of the case include evidence about the limited staffing at law enforcement agencies on the evening of the Thanksgiving holiday, the investigation of a fatal accident rather than a "routine" drunk driving stop, and the natural dissipation of alcohol in Morales' blood system within the relevant timeframe. Although Officer Hendricks detected the odor of alcohol on Morales at the accident scene and at the hospital, Officer Hendricks did not further investigate the accident scene, and the record does not reflect he was aware of the results of that investigation while he was with Morales at the hospital. The facts of this case support the exigent circumstances exception to the warrant requirement under the rationale of *Schmerber* and *McNeely*. We conclude the district court's determination exigent circumstances existed in this case is supported by sufficient competent evidence and is not against the manifest weight of the evidence. We therefore conclude the warrantless blood draw was justified under the exigent circumstances exception to the warrant requirement. *See also* N.D.C.C. § 39–20–01.1 (requiring chemical test for driver involved in crash resulting in death or serious bodily injury, if there is proba-

ble cause to believe driver violated N.D.C.C. § 39–08–01, and if the driver refuses to submit to a chemical test and exigent circumstances are not present, officer shall request search warrant to compel driver to submit to chemical test).

### V

[¶ 16] Because we conclude the warrantless blood-alcohol test was justified under the exigent circumstances exception to the warrant requirement, we do not address Morales' constitutional challenge to the consent provisions in N.D.C.C. §§ 39–20–01 and 39–20–03. *See City of Fargo v. Stutlien*, 505 N.W.2d 738, 741–42 (N.D. 1993) (refraining from deciding constitutional issue if case can be decided on appropriate alternative ground).

### VI

[¶ 17] We affirm the judgment.

[¶ 18] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and LISA FAIR McEVERS, JJ., concur.

I concur in the result.

DANIEL J. CROTHERS.