Filed 3/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 75

State of North Dakota, Plaintiff and Appellee

v.

Steven Wayne Sauter, Defendant and Appellant

No. 20170339

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Troy J. LeFevre, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Lilie A. Schoenack, Special Assistant State’s Attorney, Valley City, ND, for plaintiff and appellee.

Nicholas D. Thornton (argued) and James A. Teigland (on brief), Fargo, ND, for defendant and appellant.

State v. Sauter

No. 20170339

VandeWalle, Chief Justice.

[¶1] 
Steven Wayne Sauter appealed from a judgment entered upon a conditional guilty plea to criminal vehicular homicide, reserving his right to appeal the denial of his motion to suppress the results of a warrantless blood-alcohol test. Sauter argues there was not sufficient evidence to support the district court’s decision that exigent circumstances permitted the warrantless blood-alcohol test. We conclude the warrantless blood-alcohol test was authorized under the exigent circumstances exception to the warrant requirement. We affirm the judgment.

I

[¶2] On August 31, 2016, around 10:55 p.m., a fatal motor vehicle crash occurred in Barnes County, North Dakota. Highway Patrol Officer Paul Sova arrived at the scene at approximately 11:19 p.m. Officer Sova learned the driver of one of the vehicles was deceased. He also learned that the driver of the other vehicle, Sauter, had suffered life-threatening injuries, was in and out of consciousness, and that a “life-flight” was on its way to the scene. Officer Sova was unable to personally observe Sauter because he was receiving medical attention in the ambulance.

[¶3] Officer Sova marked the accident scene for forensic analysis, took pictures, interviewed witnesses, and made various phone calls. Officer Sova contacted his supervisor, Sgt. Matthew Denault, at midnight. Officer Sova informed Sgt. Denault that Sauter was going to be life-flighted to Fargo. Officer Sova requested Sgt. Denault go to the hospital in Fargo to continue the investigation.  Officer Sova went to notify the family of the death.

[¶4] When Sgt. Denault arrived at Sanford Hospital, Sauter was not in his room. Based on the information provided by Officer Sova, Sgt. Denault knew alcohol may be a factor, but wanted to further investigate the matter before he applied for a search warrant to obtain a blood test. Sauter was returned to his room approximately 20 minutes after Sgt. Denault arrived. Sauter was intubated, unconscious, and non-

responsive. Sgt. Denault detected an odor of alcohol coming from Sauter and decided to apply for a search warrant to obtain a blood test.

[¶5] Sgt. Denault called the “on-call” Cass County State’s Attorney, Cherie Clark, at 1:39 a.m. Clark advised that Sgt. Denault call the jail to find out which judge was “on-call.” Sgt. Denault then called the jail and was told to call the Cass County State’s Attorney. Instead, Sgt. Denault called dispatch, but was informed they did not have access to the judge’s phone numbers. He was then transferred to the Fargo Police Department. Sgt. Shane Aberle told him that the “on-call” investigator could assist him. Sgt. Denault was waiting for the investigator to call him back when he learned Sauter was being prepped for surgery. Due to the extent of Sauter’s injuries, Sgt. Denault was concerned Sauter could be in surgery for a lengthy period of time and that the alcohol, if any, in his system would dissipate. Sgt. Denault asked a nurse to do a blood draw and placed Sauter under arrest for driving under the influence at 2:51 a.m. The blood draw was done at 2:59 a.m.

[¶6] Sauter was charged with a class A felony criminal vehicular homicide. Sauter moved to suppress evidence based on the warrantless search and seizure of his blood.
 
The district court denied the motion because the search was constitutional based upon exigent circumstances.

II

[¶7] The standard of review of motions to suppress evidence is well-established:

We give deference to the district court’s findings of fact when reviewing a motion to suppress evidence. The district court is in a superior position to assess the credibility of witnesses and weigh the evidence, and conflicts are resolved in favor of affirmance. A district court’s findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court’s findings, and the decision is not contrary to the manifest weight of the evidence. Matters of law are fully reviewable by this Court on appeal.

State v. Morales
, 2015 ND 230, ¶ 7, 869 N.W.2d 417.

III

[¶8] “Unreasonable searches and seizures are prohibited by the Fourth Amendment of the United States Constitution, made applicable to the states under the Fourteenth Amendment, and by Article I, Section 8, of the North Dakota Constitution.” 
Morales
, 2015 ND 230, ¶ 8, 869 N.W.2d 417
. 
“The administration of a blood test to determine blood-alcohol concentration is a search under those constitutional provisions.”
 Id.
 “Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement.” 
Id.

[¶9] “In suppression cases, the defendant has the initial burden of establishing a prima facie case that the evidence was illegally seized.” 
Id.
 (
citing State v. Glaesman
, 545 N.W.2d 178, 182 n.1 (N.D. 1996)). “Thereafter, the burden shifts to the State to prove a warrantless search falls within a recognized exception to the warrant requirement.”
 Morales
, 2015 ND 230, ¶ 8, 869 N.W.2d 417. “Absent an exception to the warrant requirement, the exclusionary rule requires suppression of evidence obtained in violation of the federal and state constitutions’ protections against warrantless searches or seizures.” 
Id.

[¶10] Exigent circumstances is a recognized exception to the warrant requirement. 
Id.
 
See 
N.D.C.C. § 39-20-01.1(3) (providing in the absence of consent or exigent circumstances, law enforcement shall request a search warrant to obtain tests of a driver’s blood, breath, or urine to determine the alcohol concentration or presence of other substances). An “exigent circumstance” is “an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.”
 Morales
, 2015 ND 230, ¶ 10, 869 N.W.2d 417
 
(citations omitted). The Supreme Court of the United States has explained exigent circumstances as:

A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement’s need to provide emergency assistance to an occupant of a home, engage in “hot pursuit” of a fleeing suspect, or enter a burning building to put out a fire and investigate its cause. As is relevant here, we have also recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence. While these contexts do not necessarily involve equivalent dangers, in each a warrantless search is potentially reasonable because “there is compelling need for official action and no time to secure a warrant.”

To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances.  

Missouri v. McNeely
, 569 U.S. 141, 149 (2013) (citations omitted). The natural dissipation of alcohol in a driver’s bloodstream may support a finding of exigency in a specific case; however, it does not do so categorically. 
See id.
 at 156 (recognizing exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process); 
see also
 
Schmerber v. California
, 384 U.S. 757, 770-71 (1966) (recognizing where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to obtain a warrant, and, therefore, the officer’s attempt to secure evidence of petitioner’s blood alcohol content was appropriate).

[¶11] We recently addressed a similar situation in 
State v.
 
Morales
,
 
affirming the district court’s finding of exigent circumstances justifying a warrantless blood draw. 
Morales
, 2015 ND 230, ¶¶ 14-17, 869 N.W.2d 417. In 
Morales
, a city police officer responded to the scene of a fatal single-car accident. The police officer did not talk to Morales (the driver) because he was receiving medical attention; however, he was close enough to detect the odor of alcohol coming from Morales. 
Id.
 at ¶ 2. When the North Dakota Highway Patrol arrived at the scene, Morales had already been transported to the hospital. 
Id.
 at ¶ 3. The patrol officer was informed that Morales had received medical care, been taken to the hospital, and that the responding police officer had said Morales smelled of alcohol. 
Id.
 The police officer returned to his patrol duties, but was later dispatched to watch Morales at the hospital. 
Id.

[¶12] The patrol officer remained at the accident scene for approximately an hour and a half to conduct the accident investigation. 
Id.
 at ¶ 4. The investigation revealed Morales’ vehicle was traveling at a high rate of speed and failed to negotiate a turn or brake that resulted in a collision with a trailer. 
Id.
 at ¶ 14. After conducting the investigation, the patrol officer went to the hospital. 
Id.
 at ¶ 4. When the patrol officer arrived, Morales was intubated and unconscious. 
Id.
 The patrol officer smelled alcohol coming from Morales, placed him under arrest, and requested a warrantless blood draw. 
Id. 
Morales was charged with causing death while operating a vehicle under the influence of alcohol. Morales moved to suppress the evidence. 
Id. 
at ¶ 5. The district court dismissed the motion, ruling exigent circumstances justified the warrantless blood draw. 
Id.
 

[¶13] We affirmed the district court’s ruling on exigent circumstances, highlighting circumstances including: it was not a routine drunk driving accident because of the fatality; law enforcement was understaffed due to a holiday; Morales had to be transported for medical attention before he could be questioned by law enforcement; after the patrol officer finished his investigation, he proceeded to the hospital where he observed an unconscious and unresponsive Morales who smelled of alcohol; the patrol officer was concerned about the two-hour window for chemical testing and the availability of getting a warrant on a holiday; and the police officer watching Morales at the hospital was unaware of the patrol officer’s investigation results. 
Id.
 at ¶¶ 14-

15.

[¶14] Sauter argues this case is distinguishable from 
Morales
 and there was no explanation for the delay in seeking a warrant. We disagree.

[¶15] Considering the specific facts of this case, we conclude the district court’s ruling on exigent circumstances is supported by sufficient competent evidence and is not against the manifest weight of the evidence. 

[¶16] Here, law enforcement responded to and investigated a fatal car accident. Officer Sova was informed from a first responder that Sauter smelled of alcohol following the accident. However, Officer Sova was unable to get close enough to Sauter to personally observe him because Sauter was receiving life-saving medical treatment at the scene of the accident. Officer Sova continued to perform his patrol duties, including on-scene investigation, for nearly two hours. During this time, Officer Sova contacted his supervisor, Sgt. Denault, who was located in the area Sauter was being taken for medical treatment. Officer Sova informed Sgt. Denault there was suspected alcohol involved, but that he did not have any personal knowledge. After receiving this information, Sgt. Denault went to the hospital to continue the investigation of Sauter. Once at the hospital, Sgt. Denault waited approximately 20 minutes for Sauter to be returned to his room. At this point, Sauter was intubated and unconscious but smelled of alcohol. Sgt. Denault then attempted to obtain a warrant for over an hour. While Sgt. Denault was attempting to obtain a warrant, he was informed Sauter was being prepped for surgery. Sgt. Denault became concerned about losing the blood test due to the span of time from when the accident occurred to when Sauter would potentially get out of surgery. Sgt. Denault  placed Sauter under arrest and asked a nurse to do a blood draw.

[¶17] Deliberation away from the demands and pressing needs of the scene may lead one to conclude there were moments in which the officer could, as Sauter contends, have applied for a warrant. But, we believe the opportunity and necessity to do so should be determined by the circumstances of the moment, rather than from a calm retrospective view allowed by hindsight.

[¶18] The district court’s ruling is supported by sufficient competent evidence in the record and is not against the manifest weight of the evidence.

IV

[¶19] We affirm the judgment.

[¶20] Gerald W. VandeWalle, C.J.

Jon J. Jensen

Lisa Fair McEvers

Dale V. Sandstrom, S.J.

Daniel J. Crothers

[¶21] The Honorable Dale V. Sandstrom, S.J., sitting in place of Tufte, J., disqualified.

Crothers, Justice, concurring.

[¶22] I concur in the majority opinion.  I write to note how close this case is to being an unconstitutional search and why for me, under the applicable legal test, a different result likely would obtain if the events occurred today.

[¶23] Whether exigent circumstances exist to excuse the general Fourth Amendment warrant requirement is measured by examining the totality of the circumstances.  
State v. Smith
, 2014 ND 152, ¶ 13, 849 N.W.2d 599 (“Whether the natural dissipation of alcohol in the bloodstream constitutes an exigency must be determined case by case based on the ‘totality of the circumstances.’” (quoting 
Missouri v. McNeely
, 133 S.Ct. 1552, 1556 (2013))).  As is well explained in the majority opinion, circumstances here were exigent because both Highway Patrol officers involved in this case were engaged in many other necessary activities connected to the crash, neither officer ever had access to Sauter who was receiving medical treatment for his severe injuries sustained in the crash, and the logistics of obtaining a search warrant between the hours of 1:00 and 4:00 a.m. were challenging.  

[¶24] We also must be mindful that events related to this case occurred on August 31 and September 1, 2016, only two months after 
Birchfield v. North Dakota
, 136 S.Ct. 2160 (2016), was decided.  In 
Birchfield
, the United States Supreme Court reversed this Court and held the Fourth Amendment does not permit warrantless blood tests incident to a lawful arrest for drunk driving. 136 S.Ct. at 2184-85. 

[¶25] In August of 2016 the combined impact of the 
McNeely
 and 
Birchfield
 decisions was not fully understood by either law enforcement or the legal community.  The officers testified neither had received training about new warrant requirements for obtaining blood samples from drivers.  A bit more troubling, neither officer had ever received training on obtaining search warrants by using telephones or facsimile machines.  Nor is the record encouraging when we are provided with the disorganized process in Cass County and Fargo that law enforcement endured when seeking an after-hours warrant in this case.  That record shows Officer Denault was shuffled from an assistant states attorney to the county jail to the Fargo police department.  Within the Fargo police department Officer Denault was again transferred among several people who might assist in obtaining a search warrant.

[¶26] The impact of the 
McNeely
 and 
Birchfield
 decisions is now clearer.  While this is the first exigency blood draw case before this Court since 
State v. Morales
, 2015 ND 230, 869 N.W.2d 417, both law enforcement and the legal community have access to our post-
Birchfield
 cases making clear that DUI-related blood tests and urine samples generally may not be obtained without a warrant or consent.  
See
 
State v. Helm
, 2017 ND 207, ¶ 16, 901 N.W.2d 57 (holding warrantless urine test of suspected impaired driver is not reasonable search incident to arrest and driver cannot be prosecuted for refusing to submit to an unconstitutional warrantless urine test); 
State v. Hawkins
, 2017 ND 172, ¶ 7, 898 N.W.2d 446 (holding evidence supported finding defendant did not voluntarily consent to warrantless blood test); 
State v. Webster
, 2017 ND 75, ¶ 1, 891 N.W.2d 769 (concluding jury instruction that alternatively criminalized refusal to submit to a warrantless blood test incident to arrest was not harmless error beyond a reasonable doubt).
  Exigent circumstances continue to be recognized as an exception to a search warrant authorizing a DUI-

related blood draw.  
Birchfield
, 136 S.Ct. at 2184.  However, the circumstances that will be recognized as exigent have, in my view, been narrowed.

[¶27] First, 
McNeely
, 
Birchfield
, 
Morales
 and this case should be read together to mean search warrants generally are required to obtain alcohol-related blood samples. Second, both law enforcement and the courts should be aware of the problems, experienced here and in 
Morales
, in obtaining warrants after-hours or on holidays.  Those problems and delays should have been addressed by now.  Law enforcement and the courts have or should have implemented rules and procedures to facilitate timely electronic application for and issuance of search warrants.

[¶28] Some of the changes made by our judiciary have been through rule amendments.  The North Dakota Rules of Criminal Procedure have been modified in several respects to accommodate expeditious application for and issuance of search warrants.  Rule 41(c)(1)(A)(i), N.D.R.Crim.P.

[¶29] Rule 41(c)(1)(A)(i) allows the issuance of a search warrant “when the grounds for issuing the warrant are established in . . . a written declaration by a licensed peace officer made and subscribed under penalty of perjury.”  Rule 41 further provides, “In accordance with Rule 4.1, the magistrate may issue a warrant based on information communicated by telephone or other reliable electronic means.”  N.D.R.Crim.P. 41(c)(2).

[¶30] The comment to Rule 41 explains:

“Paragraph (c)(1) was amended, effective December 15, 2016, to allow grounds for issuance of a search warrant to be established in a written declaration by a licensed peace officer made and subscribed under penalty of perjury.  This amendment facilitates submission of electronic documents to establish the grounds for search warrants.  Any electronic signature on a document submitted under this rule by a licensed peace officer is considered to be that of the officer.”

N.D.R.Crim.P. 41, explanatory note.

[¶31] Rule 4.1, N.D.R.Crim.P. was adopted by this Court on March 1, 2013 and generally relates to issuance of complaints and warrants by electronic means.  As is pertinent to this case, Rule 4.1 provides:

“(a) In General.  The magistrate may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons.

(b)   Procedures.  If the magistrate decides to proceed under this rule, the following procedures apply:

(1) Taking Testimony Under Oath.  The magistrate must place under oath—and may examine—the applicant and any person on whose testimony the application is based. 

(2) Creating a Record of the Testimony and Exhibits.

(A) Testimony Limited to Attestation.  If the applicant does no more than attest to the contents of a written affidavit submitted by reliable electronic means, the magistrate must acknowledge the attestation in writing on the affidavit.

. . . .

(4) Preparing an Original Complaint, Warrant, or Summons.  If the applicant reads the contents of the proposed duplicate original, the magistrate must enter those contents into an original complaint, warrant, or summons.  If the applicant transmits the contents by reliable electronic means, the transmission received by the magistrate may serve as the original. 

. . . .

(6) Issuance.  To issue the warrant or summons, the magistrate must: 

(A) sign the original documents; 

(B) enter the date and time of issuance on the warrant or summons; and 

(C) transmit the warrant or summons by reliable electronic means to the applicant or direct the applicant to sign the magistrate’s name and enter the date and time on the duplicate original. 

(c)  Suppression Limited.  Absent a finding of bad faith, evidence obtained from a warrant issued under this rule is not subject to suppression on the ground that issuing the warrant in this manner was unreasonable under the circumstances.”

[¶32] Amendments to our rules providing for electronic application and issuance of search warrants should alleviate many of the hurdles or delays that impeded the officers here from obtaining a search warrant.  My understanding is that since 2016 many of our district courts also have taken steps to more easily accept electronic search warrant applications and to more easily issue electronic search warrants.  Utilization of such procedures and systems is designed to implement the Fourth Amendment prohibition against unreasonable searches.  In turn, going forward the failure to use available advanced procedures and systems seemingly will reduce the weight of any claimed exigency.

[¶33] Daniel J. Crothers

Jon J. Jensen